Jon Mower, Esq. (State Bar No. 72034)
jmower@tocounsel.com
Adam G. Wentland, Esq. (State Bar No. 280010)
awentland@tocounsel.com
THEODORA ORINGHER PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, California 92626-7109
Telephone: (714) 549-6200
Facsimile: (714) 549-6201

Attorneys for Plaintiff, JOSEPH E. BULFER

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH E. BULFER,<br><br>Plaintiff,<br><br>vs.<br><br>SAN DIEGO AMERICAN INDIAN HEALTH CENTER, UNUM LIFE INSURANCE COMPANY OF AMERICA, and THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,<br><br>Defendants. | Case No.: **'20 CV 0877 LAB MSB**<br><br>**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF UNDER ERISA AND DEMAND FOR JURY TRIAL**<br><br>Trial Date:    None Set |

Plaintiff JOSEPH BULFER, by and through his attorneys of record herein, brings this Complaint against the above-named Defendants, and in support thereof alleges the following:

## INTRODUCTION

1.    This case arises out of Defendants' refusal to pay Long Term Disability Income Benefits to the insured participant. Plaintiff JOSEPH BULFER ("Plaintiff" or "Mr. Bulfer") was employed by as the Chief Executive Officer ("CEO") of the SAN DIEGO AMERICAN INDIAN HEALTH CENTER ("SDAIHC"). On or

1 around August 3, 2018, Mr. Bulfer was notified that his employment with the
2 SDAIHC would be terminated, with a termination date of August 7, 2018. Mr.
3 Bulfer was paid through August 7, 2018.

4     2.     The SDAIHC were policyholders of a Group Long Term Disability
5 Plan (the "Plan") provided to its employees through UNUM LIFE INSURANCE
6 COMPANY OF AMERICAN and GUARDIAN LIFE INSURANCE COMPANY
7 OF AMERICA ("Unum" and "Guardian," respectively, and with the SDAIHC,
8 "Defendants," collectively). Under the Employee Retirement Income Security Act
9 of 1974 ("ERISA"), the Plan is required to provide qualified disability benefits to its
10 participants. 29 U.S.C. § 1003(a). Defendants have improperly denied Mr. Bulfer
11 disability benefits by materially misstating Mr. Bulfer's application and misapplying
12 the guidelines for the Plan. Mr. Bulfer's appeal was also denied, and thus Mr.
13 Bulfer has exhausted all administrative remedies available to him.

14 **JURISDICTION**

15     3.     Plaintiff Joseph Bulfer brings this action for declaratory, injunctive, and
16 monetary relief pursuant to § 502(a)(1)(B) and § 502(a)(3) of the Employee
17 Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B)
18 and 1132(a)(3). This Court has subject matter jurisdiction over Plaintiff's claims
19 pursuant to ERISA §§ 502(e) and 502(f), 29 U.S.C. §§ 1132(e) and 1132(f), and 28
20 U.S.C. § 1331.

21 **VENUE**

22     4.     Venue lies in the Southern District of California pursuant to ERISA §
23 502(e)(2), 29 U.S.C. § 1132(e)(2), because the ERISA-governed plan at issue was
24 administered in part in this District. Venue is also proper pursuant to 28 U.S.C. §
25 1391(b) because some of the events or omissions giving rise to Mr. Bulfer's claim
26 occurred within this District, and Mr. Bulfer resides in this District.
27 ///
28

THEODORA ORINGHER
COUNSELORS AT LAW

**THE PARTIES**

5.      At all relevant times, Mr. Bulfer has been a participant as defined by ERISA § 3(7), 29 U.S.C. § 1002(7) in the Plan.  Mr. Bulfer resides in San Diego, California.

6.      At all relevant times, Defendants' Long Term Disability Income Benefits has been an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1).

7.      At all relevant times, the Plan offered, *inter alia*, welfare benefits to SDAIHC employees, including Mr. Bulfer.

8.      At all relevant times, Defendant SDAIHC has been a fiduciary of the Plan.  SDAIHC is the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

9.      At all relevant times, Defendant Unum has been a fiduciary of the plan.  It is the named administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

10.     At all relevant times, Defendant Guardian has been a fiduciary of the plan.  It is an administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

**FACTS**

11.     The Plan, attached as Exhibit A, is a "Group Long Term Disability Plan" which "provides financial protection for [the participant] by paying a portion of [the participant's] income while [the participant] is disabled."  The Plan is employer sponsored, naming San Diego American Indian Health Center ("SDAIHC") as the policyholder.  As a plan established and maintained by an employer for the purpose of providing its participants disability insurance, the Plan is governed by ERISA.  *See* U.S.C. § 1002(1).

///

THEODORA ORINGHER
COUNSELORS AT LAW

12.     The Plan provides full-time employees of SDAIHC disability benefits based upon the pre-disability earnings and the age of the participant.

13.     The Plan provides benefits for a mental disorder, which is "a psychiatric or psychological condition classified in the Diagnostic and Statistical Manual of Mental Health Disorders (DSM) ... [which] include, but are not limited to, psychotic, emotional or behavioral disorders ... as of the start of a disability."

14.     Coverage under the Plan begins after a grace period and ends on the earliest of: (1) the date the policy or [the participant's] coverage under the policy is cancelled, (2) the date [the participant is] no longer in an eligible group, (3) the date [the participant's] eligible group is no longer covered, (4) the last day of the period for which [the participant] made any required contributions, or (5) the last day [the participant is] in active employment.

15.     Mr. Bulfer's last day of active employment in relation to the date of disability is at issue in this case.

16.     According to *Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375, 379-80 (2nd Cir. 2002), an employee's disability policy coverage under Unum "continued through the whole of her last day of active employment, rather than when she walked out of [the employer's] door for the last time."  Similarly, *McClaugherty v. Unum Life Ins. Co. of Amer.*, 2008 WL 11429638 (S.D. W. Va. 2008) found that under Unum's policy, "an employee is covered for a disability (as defined by the plan) that arises on or before 'the last day [the employee] is in active employment.'").

17.     Mr. Bulfer was employed as the Chief Executive Officer (CEO) of SDAIHC for over ten years prior to his termination.  As CEO, Mr. Bulfer received multiple commendations from the Board of Directors and others within the SDAIHC organization, as well as within the community of similar non-profits, as being one of the preeminent executives operating in the industry.  On or about

August 3, 2018, Mr. Bulfer, without receiving any prior complaints or expressions of concern over his job performance, without any warning, without any interactive process whatsoever, without being provided with a reason, and without any opportunity to discuss the basis for the actions taken by SDAIHC was summarily terminated from his employment, with a termination date of August 7, 2018. Mr. Bulfer's termination letter is attached as Exhibit B.

18.     As a result of being informed of his sudden termination, Mr. Bulfer developed persistent anxiety and severe major depression. On or around August 3, 2018, the same day he was notified of his termination, Mr. Bulfer saw David N. Spees, M.D., who diagnosed him with depression with anxiety precipitated by being fired with a date of onset of August 3, 2018.

19.     On or about July 30, 2019, Mr. Bulfer submitted a claim for long term disability benefits under the Plan, beginning on August 3, 2018. Mr. Bulfer's Application for Long Term Disability Income Benefits is attached as Exhibit C.

20.     By letter dated August 30, 2019, Defendant Guardian Life Insurance Company of America denied Mr. Bulfer's a claim for long term disability benefits, asserting that because "the information received from [Mr. Bulfer's] employer, San Diego American Indian Health Center, states that [Mr. Bulfer] worked 6 hours on August 3, 2019 ... the date [Mr. Bulfer's] disability began would have been August 4, 2019." Defendant Guardian's August 30, 2019 letter is attached as Exhibit D.

21.     On or about September 10, 2019, Mr. Bulfer appealed Defendant Guardian Life Insurance Company of America's denial of his claim, contending, *inter alia*, that Guardian had materially misstated Mr. Bulfer's claim and that Mr. Bulfer was covered by his claim commencing August 3, 2018. Mr. Bulfer's September 10, 2019 appeal is attached as Exhibit E.

///

///

22.    By letter dated December 13, 2019, Defendant Guardian Life Insurance Company of America's Group Claims Professional Resources Team denied Mr. Bulfer's appeal, stating, *inter alia*, that Mr. Bulfer "no longer had coverage when his disability began on August 4, 2018.    Defendant Guardian's December 13, 2019 denial of Mr. Bulfer's appeal is attached as Exhibit F.

## FIRST CLAIM FOR RELIEF

### [Claim for Benefits Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), against All Defendants]

23.    Plaintiff incorporates Paragraphs 1 through 22 as though fully set forth here.

24.    Plaintiff has exhausted his administrative remedies.

25.    ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

26.    As an ERISA-governed employee welfare benefit plan, the Plan is required to provide qualified disability benefits to its participants.    29 U.S.C. § 1003(a).    Per the terms of the Plan, the Plan must pay a portion of the participant's income while the participant is disabled, including disabilities resulting from a mental disorder.

27.    By denying Mr. Bulfer long term disability income benefits under the Plan, and by related acts and omissions, including but not limited to refusing to apply the law in effect at the time of Mr. Bulfer's claim, Defendants have violated, and continue to violate, the terms of the Plan and Mr. Bulfer's rights under the Plan and the governing law.

///

///

COMPLAINT

## SECOND CLAIM FOR RELIEF

**[Claim for Breach of Fiduciary Duty Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), against Defendant Unum Life Insurance Company of America and Defendant Guardian Life Insurance Company of America for Failure to Administer Plan in Accordance with Applicable Law]**

28.    Plaintiff incorporates Paragraphs 1 through 22 as though fully set forth here.

29.    ERISA § 404(a), 29 U.S.C. § 1004(a), requires that a fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and beneficiaries, defraying reasonable expenses of administering the plan, and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with other provisions of ERISA.

30.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant of a plan to file suit to "enjoin any act or practice" that violates Title I of ERISA or the terms of a plan, and/or obtain "other appropriate relief" to redress such violations.

31.    By engaging in the acts or omissions described above, including but not limited to interpreting the Plan in a manner contrary to applicable federal law, refusing to apply the law in effect at the time of Mr. Bulfer's claim, and refusing to provide Mr. Bulfer a benefit mandated by the Plan, Defendant Unum Life Insurance Company of America and Defendant Guardian Life Insurance Company of America have breached their fiduciary duty to Mr. Bulfer and have violated Title I of ERISA.

32.    As a result of Defendant Unum and Defendant Guardian's breaches of fiduciary duty and violations of Title I of ERISA, Plaintiff has been harmed.

///

///

///

COMPLAINT

THEODORA ORINGHER
COUNSELORS AT LAW

## THIRD CLAIM FOR RELIEF

**[Claim for Breach of Fiduciary Duty Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), against Defendant Unum Life Insurance Company of America and Defendant Guardian Life Insurance Company of America, for Failure to Inform and/or Misleading Communications]**

33.     Plaintiff incorporates Paragraphs 1 through 22 as though fully set forth here.

34.     An ERISA fiduciary is obligated to disclose material information to participants and beneficiaries, and has a duty not to mislead plan participants and beneficiaries.

35.     Defendant Unum Life Insurance Company of America and Defendant Guardian Life Insurance Company of America breached its fiduciary duty to Mr. Bulfer by failing to provide Mr. Bulfer a legitimate reason as to why Mr. Bulfer's treatment for a mental health disability beginning August 3, 2018, is not covered under the Plan.  Defendant Guardian Life Insurance Company of America asserted false factual statements in its August 30, 2019 denial of Mr. Bulfer's claims under the Plan.  In its December 13, 2019 letter denying Mr. Bulfer's appeal for benefits under the Plan, Defendant Guardian Life Insurance Company of America continued to provide specious reasons to not grant Mr. Bulfer's long term disability benefits.

36.     As a result of Defendant Unum Life Insurance Company of America and Defendant Guardian Life Insurance Company of America's breaches of fiduciary duty, Plaintiff has been harmed.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all of the triable issues within this pleading.

///

///

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant the following relief:

As to the First Claim for Relief:

A.      Declare that Defendants have violated the terms of the Plan;

B.      Order Defendants to pay long term disability income benefits to Plaintiff beginning August 7, 2018, with prejudgment interest;

C.      Declare that the Plaintiff has a right to receive long term disability income benefits under the Plan;

D.      Award Plaintiff reasonable attorneys' fees and costs of suit pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

E.      Provide such other relief as the Court deems equitable and just.

As to the Second Claim for Relief:

A.      Declare that Defendant Unum Life Insurance Company of America and Defendant Guardian Life Insurance Company of America have breached their fiduciary duty to the Plaintiff;

B.      Declare that by refusing to provide long term disability income benefits to Plaintiff, Defendant Unum Life Insurance Company of America and Defendant Guardian Life Insurance Company of America have violated ERISA;

C.      Declare that Plaintiff has a right to receive long term disability income benefits under ERISA;

D.      Enjoin Defendant Unum Life Insurance Company of America and Defendant Guardian Life Insurance Company of America from interpreting Mr. Bulfer's application for benefits under the Plan to begin on any date other than August 3, 2018 as a result of his sudden termination;

///

///

///

COMPLAINT

1    E.    Order that Defendant Unum Life Insurance Company of America and
2    Defendant Guardian Life Insurance Company of America pay to Plaintiff amounts
3    to make Plaintiff whole for the harm he has suffered due to Defendants' breaches by
4    providing other appropriate equitable relief, including but not limited to surcharge,
5    restitution, prejudgment interest, and imposing a constructive trust and/or equitable
6    lien on any funds wrongfully held by Defendant;

7    F.    Award Plaintiff reasonable attorneys' fees and costs of suit pursuant to
8    ERISA § 502(g), 29 U.S.C. § 1132(g); and

9    G.    Provide such other relief as the Court deems equitable and just.

10    As to the Third Claim for Relief:

11    A.    Declare that Defendant Unum Life Insurance Company of America and
12    Defendant Guardian Life Insurance Company of America have breached their
13    fiduciary duty to the Plaintiff;

14    B.    Order that Defendant Unum Life Insurance Company of America and
15    Defendant Guardian Life Insurance Company of America to make Plaintiff whole
16    for the harm he has suffered due to Defendant's breaches;

17    C.    Order that Defendant Unum Life Insurance Company of America and
18    Defendant Guardian Life Insurance Company of America pay to Plaintiff amounts
19    to make Plaintiff whole for the harm he has suffered due to Defendant's breaches by
20    providing other appropriate equitable relief, including but not limited to surcharge,
21    restitution, prejudgment interest, and imposing a constructive trust and/or equitable
22    lien on any funds wrongfully held by Defendant;

23    D.    Award Plaintiff reasonable attorneys' fees and costs of suit pursuant to
24    ERISA § 502(g), 29 U.S.C. § 1132(g); and

25    ///
26    ///
27    ///
28

COMPLAINT

E.   Provide such other relief as the Court deems equitable and just.

DATED:  May 8, 2020                        Respectfully submitted,

                                           THEODORA ORINGHER PC

                                           By: _____
                                               Jon Mower, Esq.
                                               Adam G. Wentland, Esq.
                                               Attorneys for Plaintiff, Joseph Bulfer

# EXHIBIT A



# San Diego American Indian Health Center

## Your Group Long Term Disability Plan

Policy No. 97989 012

Underwritten by Unum Life Insurance Company of America

3/23/2012

# CERTIFICATE OF COVERAGE

Unum Life Insurance Company of America (referred to as Unum) welcomes **you** as a client.

This is your certificate of coverage as long as **you** are eligible for coverage and **you** become insured.  **You** will want to read it carefully and keep it in a safe place.

Unum has written your certificate of coverage in plain English.  However, a few terms and provisions are written as required by insurance law.  If **you** have any questions about any of the terms and provisions, please consult Unum's claims paying office. Unum will assist **you** in any way to help **you** understand your benefits.

If the terms and provisions of the certificate of coverage (issued to **you**) are different from the policy (issued to the **Policyholder**), the policy will govern.  Your coverage may be cancelled or changed in whole or in part under the terms and provisions of the policy.

The policy is delivered in and is governed by the laws of the governing jurisdiction and to the extent applicable by the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments.

For purposes of effective dates and ending dates under the group policy, all days begin at 12:01 a.m. and end at 12:00 midnight at the **Policyholder's** address.

**Policyholder's Name:**  San Diego American Indian Health Center
**Policy Number:**  97989 012
**Policyholder's Original Plan Effective Date:**  March 1, 2012
    **Long Term Disability Plan:**               March 1, 2012

Unum Life Insurance Company of America
2211 Congress Street
Portland, Maine 04122

# TABLE OF CONTENTS

SCHEDULE OF BENEFITS.................................................................................LTD-SCHED-1

LONG TERM DISABILITY PLAN ......................................................................LTD-SCHED-1

BENEFITS AT A GLANCE..................................................................................B@G-LTD-1

LONG TERM DISABILITY PLAN ........................................................................B@G-LTD-1

COMPULSORY PROVISIONS ...............................................................................CP-1

GENERAL PROVISIONS ...............................................................................EMPLOYEE-1

LONG TERM DISABILITY ...................................................................................LTD-BEN-1

BENEFIT INFORMATION.....................................................................................LTD-BEN-1

OTHER BENEFIT FEATURES .............................................................................LTD-OTR-1

STATE REQUIREMENTS ................................................................................STATE REQ-1

OTHER SERVICES..............................................................................................SERVICES-1

GLOSSARY ......................................................................................................GLOSSARY-1

# SCHEDULE OF BENEFITS

## LONG TERM DISABILITY PLAN

This long term disability plan provides financial protection for **you** by paying a portion of your income while **you** are disabled. The amount **you** receive is based on the amount **you** earned before your **disability** began. In some cases, **you** can receive disability payments even if **you** work while **you** are disabled. Your **disability** must begin while **you** are covered under the long term disability plan.

All terms **bolded** are defined in the **GLOSSARY** section.

**You** must write your name and the date **you** received this certificate in the space provided so that it becomes your certificate of coverage. The date **you** are eligible for coverage is described in the **GENERAL PROVISIONS** section.

**EMPLOYEE NAME:**

**DATE RECEIVED:**

**ELIGIBLE GROUP(S):**

All Full-Time Employees in **active employment** in the United States with the **Employer**.

Temporary and seasonal workers are excluded from coverage.

**DISABILITY COVERED:**

**Total Disability** and **Partial Disability**

For definition of **disability** refer to "***WHEN ARE YOU TOTALLY DISABLED?***" and "***WHEN ARE YOU PARTIALLY DISABLED?***" in the BENEFIT INFORMATION section.

Some disabilities may not be covered or may have limited coverage under this long term disability plan.

**MAXIMUM MONTHLY BENEFIT:**

60% of **monthly pre-disability earnings** to a maximum benefit of $6,000 per month.

Your payment will be reduced by **benefit reductions** and **disability earnings**. Refer to "***WHAT ARE BENEFIT REDUCTIONS?***" in the BENEFIT INFORMATION section for income sources that qualify for **benefit reductions**.

**ELIMINATION PERIOD:**

90 days

This is the period of **disability** which must be satisfied before **you** are eligible to receive benefits.

**MAXIMUM PERIOD OF PAYMENT** (for **total disability** and **partial disability** combined):

| Age at Disability | Maximum Period of Payment |
|---|---|
| Less than age 60 | To age 65, but not less than 60 months |
| Age 60 | 60 months |
| Age 61 | 48 months |
| Age 62 | 42 months |
| Age 63 | 36 months |
| Age 64 | 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |

Age 69 and over                          12 months

No premium payments are required for your coverage while **you** are receiving payments under this long term disability plan.

**TOTAL BENEFIT CAP:**

The total benefit payable to **you** on a monthly basis (including all benefits provided under this long term disability plan) will not exceed 100% of your **monthly pre-disability earnings** or your **maximum monthly benefit**.

**The above items are only highlights of this long term disability plan.  For a full description of your coverage, continue reading your certificate of coverage section.**

# BENEFITS AT A GLANCE

## LONG TERM DISABILITY PLAN

This long term disability plan provides financial protection for **you** by paying a portion of your income while **you** are disabled.  The amount **you** receive is based on the amount **you** earned before your **disability** began.  In some cases, **you** can receive disability payments even if **you** work while **you** are disabled.  Your **disability** must begin while **you** are covered under the long term disability plan.

All terms **bolded** are defined in the **GLOSSARY** section.

**EMPLOYER'S ORIGINAL PLAN**
**EFFECTIVE DATE:**        March 1, 2012

**POLICY NUMBER:**        97989 012

**ELIGIBLE GROUP(S):**

> All Full-Time Employees in **active employment** in the United States with the **Employer**.

Temporary and seasonal workers are excluded from coverage.

**MINIMUM HOURS REQUIREMENT:**

> **Employees** must be working at least 30 hours per week.

**WAITING PERIOD:**

The **waiting period** is a continuous period of **active employment** which **you** must satisfy before **you** are eligible for coverage.

> For **employees** in an eligible group on or before March 1, 2012:  First of the month coincident with or next following 90 days of continuous **active employment**

> For **employees** entering an eligible group after March 1, 2012:  First of the month coincident with or next following 90 days of continuous **active employment**

**REHIRE:**

> If your employment ends and **you** are rehired within 12 months, your previous work while in an eligible group will apply toward the **waiting period**.  All other policy provisions apply.

**WHO PAYS FOR THE COVERAGE:**

> Your **Employer** pays the cost of your coverage.

**ELIMINATION PERIOD:**

> 90 days

> This is the period of **disability** which must be satisfied before **you** are eligible to receive benefits.

**DISABILITY COVERED:**

> **Total Disability** and **Partial Disability**

> For definition of **disability** refer to "*WHEN ARE YOU TOTALLY DISABLED?*" and "*WHEN ARE YOU PARTIALLY DISABLED?*" in the BENEFIT INFORMATION section.

> Some disabilities may not be covered or may have limited coverage under this long term disability plan.

**MAXIMUM MONTHLY BENEFIT:**

60% of **monthly pre-disability earnings** to a maximum benefit of $6,000 per month.

Your payment will be reduced by **benefit reductions** and **disability earnings**. Refer to "**WHAT ARE BENEFIT REDUCTIONS?**" in the BENEFIT INFORMATION section for income sources that qualify for **benefit reductions**.

**MAXIMUM PERIOD OF PAYMENT** (for **total disability** and **partial disability** combined):

| Age at Disability | Maximum Period of Payment |
|---|---|
| Less than age 60 | To age 65, but not less than 60 months |
| Age 60 | 60 months |
| Age 61 | 48 months |
| Age 62 | 42 months |
| Age 63 | 36 months |
| Age 64 | 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 and over | 12 months |

No premium payments are required for your coverage while **you** are receiving payments under this long term disability plan.

**TOTAL BENEFIT CAP:**

The total benefit payable to **you** on a monthly basis (including all benefits provided under this long term disability plan) will not exceed 100% of your **monthly pre-disability earnings** or your **maximum monthly benefit**.

**PRE-EXISTING CONDITION:**

Benefits are not payable for any **disability** caused by or resulting from a pre-existing condition, as defined in the policy. To see if your **disability** excludes **you** from receiving benefits due to a pre-existing condition, refer to "**WHAT IS AN EXCLUDED PRE-EXISTING CONDITION?**" in the BENEFIT INFORMATION section.

Some disabilities may not be covered or may have limited coverage under this long term disability plan.

**The above items are only highlights of this long term disability plan. For a full description of your coverage, continue reading your certificate of coverage section.**

# COMPULSORY PROVISIONS

## Entire Contract

This policy (the application of the **Employer**, if any, and the individual applications, if any, of the **employees**) constitute(s) the entire contract between the parties, and any statement made by the **Employer** or by any **employee** shall, in the absence of fraud, be deemed a representation and not a warranty.  No such statement shall (avoid the insurance or reduce the benefits under this policy or) be used in defense to a claim hereunder unless it is contained in a written application, nor shall any such statement of the **Employer**, except a fraudulent misstatement, be used at all to void this policy after it has been in force for two years from the date of its issue, nor shall any such statement of any **employee** eligible for coverage under the policy, except a fraudulent misstatement, be used at all in defense to a claim for loss incurred or **disability** (as defined in the policy) commencing after the insurance coverage with respect to which claim is made has been in effect for two years from the date it became effective.

No change in this policy shall be valid unless approved by an executive officer of the insurer and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this policy or to waive any of its provisions.

## Time Limit on Certain Defenses

(c) No claim for loss incurred or **disability** (as defined in the policy) commencing after two years from the effective date of the insurance coverage with respect to which the claim is made shall be reduced or denied on the ground that a disease or physical condition, not excluded from coverage by name or specific description effective on the date of loss, had existed prior to the effective date of the coverage with respect to which the claim is made.

## Grace Period

A **grace period** of 31 days will be granted for the payment of premiums accruing after the first premium, during which **grace period** the policy shall continue in force, but the **Employer** shall be liable to the insurer for the payment of the premium accruing for the period the policy continues in force.

## Notice of Claim

Written notice of claim must be given to the insurer within 20 days after the occurrence or commencement of any loss covered by the policy, or as soon thereafter as is reasonably possible.  Notice given by or on behalf of the claimant to the insurer at Unum Life Insurance Company of America, 655 North Central Avenue, Suite 900, Glendale, CA  91203, or to any authorized agent of the insurer, with information sufficient to identify the insured **employee**, shall be deemed notice to the insurer.

## Claim Forms

The insurer, upon receipt of a notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not furnished within 15 days after the giving of such notice the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting, within the time fixed in the policy for filing proofs of loss, written proof covering occurrence, the character and the extent of the loss for which claim is made.

## Proof of Loss

Written proof of loss must be furnished to the insurer, in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss, within 90 days after the termination of the period for which the insurer is liable, and in case of claim for any other loss, within 90 days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the **employee**, later than one year from the time proof is otherwise required.

## Evidence of Continuing Disability

Once Unum approves your claim **you** will be asked to provide evidence of continuing **disability** at reasonable intervals based on your condition. Evidence of continuing **disability** means documentation of your condition that is sufficient to allow **us** to determine if **you** are still disabled. Upon request, **you** will be asked to provide evidence of continuing **disability** within 45 days. If evidence is not provided within that period of time, Unum will contact your **physician** in an effort to obtain the necessary documentation. If **you** do not submit evidence of continuing **disability** and Unum is unable to obtain the necessary documentation from your **physician** or from a reasonably requested examination by a **physician** of **our** choice, your payments will end. Upon receipt of evidence of continuing **disability**, benefit payments will resume subject to the terms of the policy. **We** will send **you** a payment for any period for which Unum is liable.

## Time of Payment of Claims

Subject to due written proof of loss, all indemnities for loss for which this policy provides payment will be paid (to the insured **employee**) as they accrue and any balance remaining unpaid at termination of the period of liability will be paid (to the insured **employee**) immediately upon receipt of due written proof.

## Physical Examinations

The insurer at its own expense shall have the right and opportunity to examine the person of any individual whose **injury** or **sickness** is the basis of claim when and as often as it may reasonably require during the pendency of a claim hereunder.

## Legal Actions

No action at law or in equity shall be brought to recover on this policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

**Cancellation**

The insurer may cancel this policy at any time by written notice delivered to the **Employer**, or mailed to his last address as shown on the records of the insurer, stating when, not less than 31 days thereafter, such cancellation shall be effective; and after the policy has been continued beyond its original term the **Employer** may cancel this policy at any time by written notice delivered or mailed to the insurer, effective on receipt or on such later date as may be specified in the notice.  In the event of such cancellation by either the insurer or the **Employer**, the insurer shall promptly return on a prorata basis the unearned premium paid, if any, and the **Employer** shall promptly pay on a prorata basis the earned premium which has not been paid.  (In computing the prorata premium to be returned by the insurer or to be paid by the **Employer**, any discounts in premium or premium rate actually allowed to the **Employer** because of the longer periods for which premiums, at the time of the cancellation, had been paid or agreed to be paid shall be disregarded, and the prorata return or payment of premium will be computed upon the basis of the insurer's regular and customary premium or premium rate for the coverage of this policy.)  Such cancellation shall be without prejudice to any claim originating prior to the effective date of such cancellation.

**Illegal Occupation or Commission of a Felony**

The insurer shall not be liable for any loss to which a contributing cause was the commission of or attempt to commit a felony by the person whose **injury** or **sickness** is the basis of claim, or to which a contributing cause was such person's being engaged in an illegal occupation.

# GENERAL PROVISIONS

## *WHAT IS THE CERTIFICATE OF COVERAGE?*

This certificate of coverage is a written statement prepared by Unum and may include attachments.  It tells **you**:

- the coverage for which **you** may be entitled;
- to whom Unum will make a payment; and
- the limitations, exclusions and requirements that apply to your coverage.

## *WHEN ARE YOU ELIGIBLE FOR COVERAGE?*

If **you** are working for your **Employer** in an eligible group, the date **you** are eligible for coverage is the later of:

- the **Policyholder's** original effective date of coverage; or
- the day after **you** complete your **waiting period**.

## *WHAT IS AN ELIGIBLE GROUP?*

All Full-Time Employees in **active employment** in the United States with the **Employer**.

Temporary and seasonal workers are excluded from coverage.

## *WHAT IS YOUR WAITING PERIOD?*

The **waiting period** is a continuous period of **active employment** which **you** must satisfy before **you** are eligible for coverage.

For **employees** in an eligible group on or before March 1, 2012:  First of the month coincident with or next following 90 days of continuous **active employment**

For **employees** entering an eligible group after March 1, 2012:  First of the month coincident with or next following 90 days of continuous **active employment**

## *REHIRE:*

If your employment ends and **you** are rehired within 12 months, your previous work while in an eligible group will apply toward the **waiting period**.  All other policy provisions apply.

## *WHEN DOES YOUR COVERAGE BEGIN?*

When your **Employer** pays 100% of the cost of your coverage **you** will be covered at 12:01 a.m. on the date **you** are eligible for coverage.

When **you** and your **Employer** share the cost of your coverage or when **you** pay 100% of the cost yourself, **you** will be covered at 12:01 a.m. on the latest of:

- the date **you** are eligible for coverage, if **you** apply for insurance on or before that date; or

- the date **you** apply for insurance, if **you** apply within 31 days after your eligibility date; or
- the date Unum approves your application, if **evidence of insurability** is required.

**Evidence of insurability** is required if **you**:

- are a **late applicant**, which means **you** apply for coverage more than 31 days after the date **you** are eligible for coverage; or
- voluntarily cancelled your coverage and are reapplying.

An **evidence of insurability** form can be obtained from your **Employer**.

### WHAT IF YOU ARE ABSENT FROM WORK ON THE DATE YOUR COVERAGE WOULD NORMALLY BEGIN?

If **you** are absent from work due to **injury**, **sickness**, temporary **layoff** or **leave of absence**, your coverage will begin on the date **you** return to **active employment**.

### ONCE YOUR COVERAGE BEGINS, WHAT HAPPENS IF YOU ARE TEMPORARILY NOT WORKING?

If **you** are on a temporary **layoff**, and if premium is paid, **you** will be covered through the end of the month that immediately follows the month in which your temporary **layoff** begins.

If **you** are on a **leave of absence**, and if premium is paid, **you** will be covered through the end of the month that immediately follows the month in which your **leave of absence** begins.

### WHEN WILL CHANGES TO YOUR COVERAGE TAKE EFFECT?

Once your coverage begins, any increased or additional coverage will take effect immediately if **you** are in **active employment** or if **you** are on a covered **layoff** or **leave of absence**. If **you** are not in **active employment** due to **injury** or **sickness**, any increased or additional coverage will begin on the date **you** return to **active employment**.

Any decrease in coverage will take effect immediately but will not affect a **payable claim** that occurs prior to the decrease.

### WHEN DOES YOUR COVERAGE END?

Your coverage(s) under the policy ends on the earliest of:

- the date the policy or your coverage under the policy is cancelled;
- the date **you** no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the last day of the period for which **you** made any required contributions; or
- the last day **you** are in **active employment**.

However, coverage will continue:

- while benefits are being paid;

- while **you** are fulfilling the requirements of your **elimination period**, so long as premium is being paid; or
- in accordance with the **layoff** and **leave of absence** provisions of the policy.

Unum will provide coverage for a **payable claim** which occurs while **you** are covered under the policy.

### HOW WILL UNUM HANDLE INSURANCE FRAUD?

Unum promises to focus on all means necessary to support fraud detection, investigation, and prosecution.

Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

In addition, submission of false information in connection with the claim form may also constitute a crime under federal laws.  Unum will pursue any appropriate legal remedies in the event of insurance fraud, including prosecuting under federal mail fraud, federal wire fraud, and/or the federal Racketeer Influenced and Corrupt Organizations Act statutes.  Any false statements made herein may be reported to state and federal tax and regulatory authorities as is appropriate.

### DOES THE POLICY REPLACE OR AFFECT ANY WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE?

The policy does not replace or affect the requirements for coverage by any workers' compensation or state disability insurance.

### DOES YOUR EMPLOYER ACT AS YOUR AGENT OR UNUM'S AGENT?

For purposes of the policy, your **Employer** acts on its own behalf as your agent or as Unum's agent for the limited purpose of individualizing certificates and providing contact information at time of claim.  Under no other circumstance will your **Employer** be deemed the agent of Unum.

# LONG TERM DISABILITY

# BENEFIT INFORMATION

## *WHEN ARE YOU TOTALLY DISABLED?*

For the first 27 months, **you** are **totally disabled** when, as a result of **sickness** or **injury**, **you** are unable to perform with reasonable continuity the **substantial and material acts** necessary to pursue your **usual occupation** in the usual and customary way.

After benefits have been paid for 24 months of **disability you** are **totally disabled** when, as a result of **sickness** or **injury**, **you** are not able to engage with reasonable continuity in any occupation in which **you** could reasonably be expected to perform satisfactorily in light of your age, education, training, experience, station in life, and physical and mental capacity.

The loss of a professional or occupational license or certification does not, in itself, constitute **disability**.

## *WHEN ARE YOU PARTIALLY DISABLED?*

**You** are **partially disabled** when **you** are not **totally disabled** and that while actually working in your **usual occupation**, as a result of **sickness** or **injury you** are unable to earn 80% or more of your **indexed monthly pre-disability earnings**.

After benefits have been paid for 24 months **you** are **partially disabled** when **you** are not **totally disabled** and that while actually working in an occupation, as a result of **sickness** or **injury you** are unable to engage with reasonable continuity in that or in any other occupation in which **you** could reasonably be expected to perform satisfactorily in light of your age, education, training, experience, station in life, and physical and mental capacity.

The loss of a professional or occupational license or certification does not, in itself, constitute **disability**.

## *HOW LONG MUST YOU BE DISABLED BEFORE YOU ARE ELIGIBLE TO RECEIVE BENEFITS?*

**You** must be continuously disabled through your **elimination period**. Unum will treat your **disability** as continuous if your **disability** stops for 30 days or less during the **elimination period**. The days that **you** are not disabled will not count toward your **elimination period**.

Your **elimination period** is 90 days.

This is the period of **disability** which must be satisfied before **you** are eligible to receive benefits.

### *HOW WILL UNUM DETERMINE YOUR ELIGIBILITY FOR BENEFITS?*

Unum, and not your **Employer** or plan administrator, has the responsibility to fairly, thoroughly, objectively and timely investigate, evaluate and determine your eligibility for benefits for any claim **you** make on the policy. **We** will:

- obtain, with your cooperation and authorization if required by law, only such information that is necessary to evaluate your claim and decide whether to accept or deny your claim for benefits. **We** may obtain this information from your notice of claim, submitted proofs of loss, statements, or other materials provided by **you** or others on your behalf; or, at **our** expense we may obtain necessary information, or have **you** physically examined when and as often as **we** may reasonably require while the claim is pending. In addition, and at your option and at your expense, **you** may provide **us** and **we** will consider any other information, including but not limited to, reports from a **physician** or other expert of your choice. **You** should provide **us** with all information that **you** want **us** to consider regarding your claim;
- consider and interpret the policy and all information obtained by **us** and submitted by **you** that relates to your claim for benefits and make **our** determination of your eligibility for benefits based on that information and in accordance with the policy and applicable laws;
- if **we** approve your claim, review **our** decision to approve your claim for benefits as often as is reasonably necessary to determine your continued eligibility for benefits; and
- if **we** deny your claim, explain in writing to **you** the basis for an adverse determination in accordance with the policy as described in the provision entitled *"WHAT NOTIFICATION WILL YOU RECEIVE IF YOUR CLAIM IS DENIED?"*

In the event **we** deny your claim for benefits, in whole or in part, **you** can appeal the decision to **us**. If **you** choose to appeal **our** decision, the process **you** must follow is set forth in the policy provision entitled *"WHAT RECOURSE DO YOU HAVE IF YOUR CLAIM IS DENIED?"* If **you** do not appeal the decision to **us**, then the decision will be Unum's final decision.

### *CAN YOU SATISFY YOUR ELIMINATION PERIOD IF YOU ARE WORKING?*

Yes. If **you** are working while **you** are disabled, the days **you** are disabled will count toward your **elimination period**.

### *WHEN WILL YOU BEGIN TO RECEIVE PAYMENTS?*

**You** will begin to receive payments when **we** approve your claim, providing the **elimination period** has been met. **We** will send **you** a payment monthly for any period for which Unum is liable.

### *ONCE PAYMENTS BEGIN MUST YOU CONTINUE TO BE UNDER THE REGULAR CARE OF A PHYSICIAN?*

**You** must be under the **regular care** of a **physician** unless **regular care**:

- will not improve your disabling condition(s); or
- will not prevent a worsening of your disabling condition(s).

### *HOW WILL UNUM CALCULATE YOUR DISABILITY PAYMENT IF YOU ARE TOTALLY DISABLED?*

If **you** are **totally disabled** and have an earnings loss of 20% or greater due to the same **disability**, **we** will follow this process to calculate your **monthly payment**.

1. Multiply your **monthly pre-disability earnings** by 60%.
2. The **maximum monthly benefit** is $6,000.
3. Compare the answer from Item 1 with the **maximum monthly benefit**. The lesser of these two amounts is your **gross disability payment**.
4. Subtract from your **gross disability payment** any **benefit reductions**. This is your **monthly payment**.
5. Your **monthly payment** will be adjusted by any **disability earnings** as follows:

   a. During the first 12 months of payments, while working, add your monthly **disability earnings** to your **gross disability payment**.

   If the answer from Item 5a is less than or equal to 100% of your **indexed monthly pre-disability earnings**, Unum will not further reduce your **monthly payment**.

   If the answer from Item 5a is more than 100% of your **indexed monthly pre-disability earnings**, Unum will subtract the amount over 100% from your **monthly payment**.

   b. After 12 months of payments, while working, **we** will subtract 50% of your **disability earnings** from your **monthly payment**.

Refer to *"WHAT ARE BENEFIT REDUCTIONS?"* in the **BENEFIT INFORMATION** section for income sources that qualify for **benefit reductions**.

Unum may require **you** to send proof of your monthly **disability earnings** at least quarterly if these records are not available from your **Employer**. **We** will adjust your payment based on your quarterly **disability earnings**.

After the **elimination period**, if **you** are disabled for less than 1 month, **we** will send **you** 1/30 of your payment for each day of **disability**.

### *HOW WILL UNUM CALCULATE YOUR DISABILITY PAYMENT IF YOU ARE PARTIALLY DISABLED?*

If **you** are **partially disabled** and have an earnings loss of 20% or greater due to the same **disability**, **we** will follow this process to calculate your **monthly payment**.

1. Multiply your **monthly pre-disability earnings** by 60%.
2. The **maximum monthly benefit** is $6,000.
3. Compare the answer from Item 1 with the **maximum monthly benefit**. The lesser of these two amounts is your **gross disability payment**.
4. Subtract from your **gross disability payment** any **benefit reductions**. This is your **monthly payment**.
5. Your **monthly payment** will be adjusted by any **disability earnings** as follows:

   a. During the first 12 months of payments, while working, add your monthly **disability earnings** to your **gross disability payment**.

If the answer from Item 5a is less than or equal to 100% of your **indexed monthly pre-disability earnings**, Unum will not further reduce your **monthly payment**.

If the answer from Item 5a is more than 100% of your **indexed monthly pre-disability earnings**, Unum will subtract the amount over 100% from your **monthly payment**.

b.  After 12 months of payments, while working, **we** will subtract 50% of your **disability earnings** from your **monthly payment**.

Refer to "**WHAT ARE BENEFIT REDUCTIONS?**" in the **BENEFIT INFORMATION** section for income sources that qualify for **benefit reductions**.

Unum may require **you** to send proof of your monthly **disability earnings** at least quarterly if these records are not available from your **Employer**. **We** will adjust your payment based on your quarterly **disability earnings**.

After the **elimination period**, if **you** are disabled for less than 1 month, **we** will send **you** 1/30 of your payment for each day of **disability**.

### WILL UNUM EVER PAY MORE THAN 100% OF MONTHLY PRE-DISABILITY EARNINGS OR MAXIMUM MONTHLY BENEFIT?

The total benefit payable to **you** on a monthly basis (including all benefits provided under this long term disability plan) will not exceed 100% of your **monthly pre-disability earnings** or your **maximum monthly benefit**.

### WHAT ARE YOUR MONTHLY PRE-DISABILITY EARNINGS?

"**Monthly Pre-disability Earnings**" means your gross monthly income from your **Employer** in effect just prior to your date of **disability**. It includes your total income before taxes. It is prior to any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account. It does not include income received from commissions, bonuses, overtime pay or any other extra compensation, or income received from sources other than your **Employer**.

### WHAT WILL WE USE FOR MONTHLY PRE-DISABILITY EARNINGS IF YOU BECOME DISABLED DURING A COVERED LAYOFF OR LEAVE OF ABSENCE?

If **you** become disabled while **you** are on a covered **layoff** or **leave of absence**, **we** will use your **monthly pre-disability earnings** from your **Employer** in effect just prior to the date your absence begins.

### WHAT HAPPENS IF YOUR DISABILITY EARNINGS FLUCTUATE WHILE YOU ARE DISABLED?

If your **disability earnings** routinely fluctuate widely from month to month, Unum will average your **disability earnings** over the most recent 3 months to determine if your claim should continue. **We** will not use this average to determine your **monthly payment**.

If Unum averages your **disability earnings**, **we** will not terminate your claim unless the average of your **disability earnings** from the last 3 months exceeds 80% of **indexed monthly pre-disability earnings**.

**We** will not pay **you** for any month during which **disability earnings** exceed the amount allowable under the long term disability plan.

### WHAT ARE BENEFIT REDUCTIONS?

Unum will only subtract **benefit reductions** which are paid or to which **you** are entitled, in accordance with the provision "***WHAT IF UNUM DETERMINES YOU MAY QUALIFY FOR BENEFIT REDUCTIONS?***", as a result of the same **disability** and inability to work as that claimed under the policy. Unum will subtract from your **gross disability payment** the following **benefit reductions**:

1. The amount that **you** receive or are entitled to receive as a temporary disability benefit under a workers' compensation **law**.

2. The amount that **you** receive or are entitled to receive under an occupational disease **law** or any other **act** or **law** with similar intent, other than workers' compensation.

3. The amount that **you** receive or are entitled to receive as disability income payments under any state compulsory benefit **act** or **law**.

4. The amount that **you** receive as disability income payments under any governmental retirement system as a result of your job with your **Employer**.

5. The amount that **you**, your dependent spouse and children receive or are entitled to receive as disability payments because of your **disability** under:

   - the United States Social Security **Act**.
   - the Canada Pensions **Plan**.
   - the Quebec Pension **Plan**.
   - any similar **plan** or **act**.

6. The amount that **you** receive as disability payments under your **Employer's retirement plan**.

   Disability payments under a **retirement plan** will be those benefits which are paid due to **disability** and do not reduce the retirement benefit which would have been paid if the **disability** had not occurred.

   **We** will not reduce your benefit by amounts rolled over or transferred to any eligible **retirement plan**.

7. The amount that **you** receive as disability payments under Title 46, United States Code Section 688 (The Jones **Act**).

If **you** receive a lump sum payment from any **benefit reductions**, the lump sum will be pro-rated on a monthly basis over the time period for which the sum was given. If no time period is stated, **we** will use a reasonable one.

### WHAT ARE NOT BENEFIT REDUCTIONS?

Unum will not subtract from your **gross disability payment** income **you** receive from, but not limited to, the following:

- 401(k) **plans**
- profit sharing **plans**
- thrift **plans**
- tax sheltered annuities
- stock ownership **plans**
- non-qualified **plans** of deferred compensation
- pension **plans** for partners
- military pension and disability income **plans**
- credit disability insurance
- franchise disability income **plans**
- individual retirement accounts (IRA)
- individual disability income **plans**
- **salary continuation or accumulated sick leave plans**

### WHAT IF SUBTRACTING BENEFIT REDUCTIONS RESULTS IN A BENEFIT OF LESS THAN $100 OR 10% OF YOUR GROSS DISABILITY PAYMENT?

The **monthly payment** will be the greater of:

- $100; or
- 10% of your **gross disability payment**.

Unum may apply this amount toward an outstanding overpayment.

### WHAT HAPPENS WHEN YOU RECEIVE A COST OF LIVING INCREASE FROM BENEFIT REDUCTIONS?

Once Unum has subtracted any **benefit reductions** from your **gross disability payment**, Unum will not further reduce your payment due to a cost of living increase from that source.

### MUST YOU APPLY FOR BENEFITS LISTED IN THE BENEFIT REDUCTIONS SECTION?

If **you** are entitled to benefits under Item(s) 1, 2, 3 and 5  in the **benefit reductions** section, **you** have an obligation to apply for those benefits.

### WHAT IF UNUM DETERMINES YOU MAY QUALIFY FOR BENEFIT REDUCTIONS?

When **we** have both a reasonable, good faith belief that **you** are entitled to benefits under Item(s) 1, 2, 3 and 5 , in the **benefit reductions** section and **we** have a means of reasonably estimating the amount payable, **we** will reduce your benefits in accordance with the provision "*HOW WILL UNUM CALCULATE YOUR DISABILITY PAYMENT IF YOU ARE TOTALLY OR PARTIALLY DISABLED?*", if:

- **you** have not applied for such benefits; or
- **you** have applied for such benefits but have not pursued your application with reasonable diligence.

Your Long Term Disability payment will NOT be reduced by the estimated amount if **you** apply for the disability payments under Item(s) 1, 2, 3 and 5 , in the **benefit reductions** section and pursue these benefits with reasonable diligence.

If your payment has been reduced by an estimated amount, your payment will be adjusted when **we** receive proof of the amount awarded.

If **you** receive a lump sum payment from any **benefit reduction**, the lump sum will be pro-rated on a monthly basis over the time period for which the sum was given.

If no time period is stated, **we** will use a reasonable one.

### HOW LONG WILL UNUM CONTINUE TO SEND YOU PAYMENTS?

Unum will send **you** a payment each month up to the **maximum period of payment**.  Your **maximum period of payment** for **total disability** and **partial disability** combined is based on your age at **disability** as follows:

| Age at Disability | Maximum Period of Payment |
|---|---|
| Less than age 60 | To age 65, but not less than 60 months |
| Age 60 | 60 months |
| Age 61 | 48 months |
| Age 62 | 42 months |
| Age 63 | 36 months |
| Age 64 | 30 months |
| Age 65 | 24 months |
| Age 66 | 21 months |
| Age 67 | 18 months |
| Age 68 | 15 months |
| Age 69 and over | 12 months |

### WHEN WILL PAYMENTS STOP?

**We** will stop sending **you** payments and your claim will end on the earliest of the following:

- the end of the **maximum period of payment**;
- the date **you** are no longer disabled under the terms of the long term disability plan;
- when **you** fail to comply with the **Evidence of Continuing Disability** section;
- the date **you** fail to submit to any reasonable request to be examined by a **physician** of **our** choice without just cause;
- the date the most recent 3 month average of your **disability earnings** exceed 80% of your **monthly pre-disability earnings** if **you** are **totally disabled** or **partially disabled**;
- the date **you** die.

### WHAT HAPPENS IF UNUM OVERPAYS YOUR CLAIM?

Unum has the right to recover any overpayments due to:

- fraud;
- any error Unum makes in processing a claim; and

- your receipt of funds that qualify for **benefit reductions**.

**You** must reimburse **us** in full.  **We** will work with **you** to determine an appropriate method by which the repayment is to be made.

Unum will not recover more money than the amount **we** paid **you**.

### WHAT IS THE LIMITED BENEFIT PERIOD FOR MENTAL DISORDERS?

**MENTAL DISORDER** means a psychiatric or psychological condition classified in the Diagnostic and Statistical Manual of Mental Health Disorders (DSM), published by the American Psychiatric Association, most current as of the start of a **disability**. Such disorders include, but are not limited to, psychotic, emotional or behavioral disorders.  If the DSM is discontinued or replaced, these disorders will be those classified in the diagnostic manual then used by the American Psychiatric Association as of the start of a **disability**.

Disabilities, due solely to **mental disorders** are limited to a maximum pay period of 24 months.

Unum will continue to send **you** payments beyond the 24 month period if **you** meet one or both of these conditions:

1. If **you** are confined to a **hospital or institution** at the end of the 24 month period, Unum will continue to send **you** payments during your confinement.

   If **you** are still disabled when **you** are discharged, Unum will send **you** payments for a recovery period of up to 90 days.

   If **you** become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Unum will send payments during that additional confinement and for one additional recovery period up to 90 more days.

2. In addition to Item 1, if, after the 24 month period for which **you** have received payments, **you** continue to be disabled and subsequently become confined to a **hospital or institution** for at least 14 days in a row, Unum will send payments during the length of the reconfinement.

Unum will not pay beyond the limited benefit period as indicated above, or the **maximum period of payment**, whichever occurs first.

Unum will not apply the **mental disorder** limitation to dementia if it is a result of:

- stroke;
- trauma;
- viral infection;
- Alzheimer's disease; or
- other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment.

### WHAT DISABILITIES ARE NOT COVERED UNDER YOUR LONG TERM DISABILITY PLAN?

Your long term disability plan does not cover any disabilities caused by or resulting from your:

- intentionally self-inflicted **injuries**.
- active participation in a riot.
- commission of a felony for which **you** have been convicted.
- war, declared or undeclared, or any act of war.
- excluded pre-existing condition.

The loss of a professional or occupational license or certification does not, in itself, constitute **disability**.

### WHAT PRE-EXISTING CONDITIONS ARE EXCLUDED?

**You** are not covered for a **disability** caused or substantially contributed to by a pre-existing condition or medical or surgical treatment of a pre-existing condition.

**You** have an excluded pre-existing condition if:

- **you** received medical treatment, care or services for a diagnosed condition, or took prescribed medication for that diagnosed condition, in the 3 months immediately prior to your effective date of coverage; and
- the **disability** caused or substantially contributed to by the condition begins in the first 12 months after your effective date of coverage.

No claim for **disability** commencing after 2 years from your effective date of coverage shall be reduced or denied on the grounds that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to your effective date of coverage.

### WHAT HAPPENS IF YOU RETURN TO WORK FULL TIME AND YOUR DISABILITY OCCURS AGAIN?

If **you** have a **recurrent disability**, Unum will treat your **disability** as part of your prior claim and **you** will not have to complete another **elimination period** if:

- your prior claim ended when **you** returned to work for your **Employer** and your earnings from your **Employer** exceeded 80% of your **monthly pre-disability earnings**;
- **you** were continuously insured under the long term disability plan for the period between your prior claim and your **recurrent disability**; and
- your **recurrent disability** occurs within 6 months of the end of your prior claim.

Your **recurrent disability** will be subject to the same terms of this long term disability plan as your prior claim.

Any **disability** which occurs after 6 months from the date your prior claim ended will be treated as a new claim. The new claim will be subject to all of the policy provisions.

If **you** are no longer covered under the policy and **you** receive payments under any other group long term disability plan offered through your current **Employer**, this provision will no longer apply.

### *WHAT NOTIFICATION WILL YOU RECEIVE IF YOUR CLAIM IS DENIED?*

If your claim is denied, in full or in part, Unum will notify **you** in writing.  This notification will include:

- the specific reason for the denial;
- the policy provisions on which the denial is based;
- a description of any additional information necessary to complete the claim and an explanation of why that information is necessary; and
- a description of the policy's procedures and applicable time limits for appeal.

### *WHAT RECOURSE DO YOU HAVE IF YOUR CLAIM IS DENIED?*

**You** may appeal to **us** for review within 180 days from the receipt of the claim denial.  Requests for appeals must be made in writing and should be sent to the address specified in the claim denial.  **You** may request access to all relevant documents and will have the opportunity to submit written comments, documents, or other information in support of your appeal.

# LONG TERM DISABILITY

## OTHER BENEFIT FEATURES

### *WHAT BENEFITS WILL BE PROVIDED TO YOU OR YOUR FAMILY IF YOU DIE OR ARE TERMINALLY ILL? (Survivor Benefit)*

When Unum receives proof that **you** have died, **we** will pay your **eligible survivor** a lump sum benefit equal to 3 months of your **gross disability payment** if, on the date of your death:

- your **disability** had continued for 180 or more consecutive days; and
- **you** were receiving or were entitled to receive payments under the long term disability plan.

If **you** have no **eligible survivors**, payment will be made to your estate.

However, **we** will first apply the survivor benefit to any overpayment which may exist on your claim.

**You** may receive your 3 month survivor benefit prior to your death if **you** have been diagnosed as terminally ill.

**We** will pay **you** a lump sum amount equal to 3 months of your **gross disability payment** if:

- **you** have been diagnosed with a terminal illness or condition;
- your life expectancy has been reduced to 12 months or less; and
- **you** are receiving **monthly payments**.

Your right to exercise this option and receive payment is subject to the following:

- **you** must make this election in writing to Unum; and
- your **physician** must certify in writing that **you** have a terminal illness or condition and your life expectancy has been reduced to 12 months or less.

This benefit is available to **you** on a voluntary basis and will only be payable once.

If **you** elect to receive this benefit prior to your death, no 3 month survivor benefit will be payable upon your death.

# STATE REQUIREMENTS

## CALIFORNIA
## CONTACT NOTICE

**GENERAL QUESTIONS: If you have any general questions about your insurance, you may contact the Insurance Company by:**

**CALLING:**
1-800-421-0344 (Customer Information Call Center)

-OR-

**WRITING TO:**
Unum Life Insurance Company of America
2211 Congress Street
Portland, Maine 04122

**COMPLAINTS: If a complaint arises about your insurance, you may contact the Insurance Company by:**

**CALLING:**
(Compliance Center Complaint Line)
Toll free: 1-800-321-3889, Option 2
Direct: 207-575-7568

-OR-

**WRITING TO:**
Deborah J. Jewett, Manager, Customer Relations
Unum Life Insurance Company of America
2211 Congress Street
Portland, Maine 04122

**WHEN CALLING OR WRITING TO THE INSURANCE COMPANY, PLEASE PROVIDE YOUR INSURANCE POLICY NUMBER.**

If the Policy or Certificate of Coverage was issued or delivered by an agent or broker, please contact your agent or broker for assistance.

You also can contact the California Department of Insurance. However, the California Department of Insurance should be contacted only after discussions with the Insurance Company or its agent or other representative, or both, have failed to produce a satisfactory resolution to the problem.

Department of Insurance
Consumer Communications Bureau
300 South Spring Street - South Tower
Los Angeles, California 90013
In-State Toll Free Hotline Telephone Number: 1-800-927-4357
Local Telephone Number: 213-897-8921
Office Hours: 8:00 a.m. - 5:00 p.m.

This form is for contact information only, and it is not to be considered a condition for the Policy.

# OTHER SERVICES

These services are also available from **us** as part of your Unum Long Term Disability plan.

## IS THERE A WORK LIFE ASSISTANCE PROGRAM AVAILABLE WITH THE LONG TERM DISABILITY PLAN?

**We** do provide **you** and your dependents access to a work life assistance program designed to assist **you** with problems of daily living.

**You** can call and request assistance for virtually any personal or professional issue, from helping find a day care or transportation for an elderly parent, to researching possible colleges for a child, to helping to deal with the stress of the workplace. This work life program is available for everyday issues as well as crisis support.

This service is also available to your **Employer**.

This program can be accessed by a 1-800 telephone number available 24 hours a day, 7 days a week or online through a website.

Information about this program can be obtained through your plan administrator.

## HOW CAN UNUM'S SOCIAL SECURITY CLAIMANT ADVOCACY PROGRAM ASSIST YOU WITH OBTAINING SOCIAL SECURITY DISABILITY BENEFITS?

In order to be eligible for assistance from Unum's Social Security claimant advocacy program, **you** must be receiving **monthly payments** from **us**. Unum can provide expert advice regarding your claim and assist **you** with your application or appeal.

Receiving Social Security benefits may enable:

- **you** to receive Medicare after 24 months of disability payments;
- **you** to protect your retirement benefits; and
- your family to be eligible for Social Security benefits.

**We** can assist **you** in obtaining Social Security disability benefits by:

- helping **you** find appropriate legal representation;
- obtaining medical and vocational evidence; and
- reimbursing pre-approved case management expenses.

# GLOSSARY

**ACTIVE EMPLOYMENT** means **you** are working for your **Employer** for earnings that are paid regularly and that **you** are performing the **substantial and material acts** of your **usual occupation**.  **You** must be working at least 30 hours per week.

Your work site must be:

- your **Employer's** usual place of business;
- an alternative work site at the direction of your **Employer**, including your home; or
- a location to which your job requires **you** to travel.

Normal vacation is considered **active employment**.

**BENEFIT REDUCTIONS** means amounts paid to **you** in compensation for the same **disability** for which benefits are claimed under this policy.  This income will be subtracted from your **gross disability payment**.  Refer to "**WHAT ARE BENEFIT REDUCTIONS?**" in the **BENEFIT INFORMATION** section for income sources that qualify for **benefit reductions**.

**DISABILITY** means **total disability** or **partial disability** due to **sickness** or **injury**.

**DISABILITY EARNINGS** means the earnings which **you** receive for work performed while **you** are disabled and working for your **Employer** or earnings received from another employer if **you** became employed after your **disability** began.

**ELIGIBLE SURVIVOR** means your spouse or **registered domestic partner**, if living; otherwise your children equally.

**ELIMINATION PERIOD** means a period of **total disability** and/or **partial disability** which must be satisfied before **you** are eligible to receive benefits from Unum.

**EMPLOYEE** means a person who is in **active employment** with the **Employer**.

**EMPLOYER** means the **Policyholder**, and includes any division, subsidiary or affiliated company named in the policy.

**EVIDENCE OF INSURABILITY** means a statement of your medical history which Unum will use to determine if **you** are approved for coverage.  **Evidence of Insurability** will be provided at Unum's expense.

**GRACE PERIOD** means the period of time following the premium due date during which premium payment may be made without cancellation or modification of the policy.

**GROSS DISABILITY PAYMENT** means the benefit amount before Unum subtracts **benefit reductions** and **disability earnings**.

**HOSPITAL OR INSTITUTION** means an accredited facility licensed to provide care and treatment for the condition causing your **disability**.

**INDEXED MONTHLY PRE-DISABILITY EARNINGS** means your **monthly pre-disability earnings** adjusted on each anniversary of benefit payments by the current annual percentage increase in the Consumer Price Index.  Your **indexed monthly pre-disability earnings** may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-U) is published by the U.S. Department of Labor. Unum reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-U.

Indexing is only used as a factor in the determination of the percentage of lost earnings while **you** are disabled and working.

**INJURY** means physical harm or damage to the body.  **Injury** which occurs before **you** are covered under the policy will be treated as a **sickness**.

**INSURED** means any person covered under the policy.

**LATE APPLICANT** means **you** apply for coverage more than 31 days after the date **you** are eligible for coverage.

**LAW, PLAN OR ACT** means the original enactments of the **law, plan or act** and all amendments.

**LAYOFF** or **LEAVE OF ABSENCE** means **you** are temporarily absent from **active employment** for a period of time that has been agreed to in advance in writing by your **Employer**.

Your normal vacation time or any period of **disability** is not considered a temporary **layoff** or **leave of absence**.

**MAXIMUM MONTHLY BENEFIT** means the total benefit amount for which an **employee** is eligible under this long term disability plan subject to the terms of the policy.

**MAXIMUM PERIOD OF PAYMENT** (for **total disability** and **partial disability** combined) means the longest period of time Unum will make payments to **you**.

**MENTAL DISORDER** means a psychiatric or psychological condition classified in the Diagnostic and Statistical Manual of Mental Health Disorders (DSM), published by the American Psychiatric Association, most current as of the start of a **disability**.  Such disorders include, but are not limited to, psychotic, emotional or behavioral disorders.  If the DSM is discontinued or replaced, these disorders will be those classified in the diagnostic manual then used by the American Psychiatric Association as of the start of a **disability**.

**MONTHLY PRE-DISABILITY EARNINGS** means your gross monthly income from your **Employer** as defined in this long term disability plan.

**MONTHLY PAYMENT** means your payment after any **benefit reductions** have been subtracted from your **gross disability payment**.

**PARTIALLY DISABLED** means **you** are not **totally disabled** and that while actually working in your **usual occupation**, as a result of **sickness** or **injury you** are unable to earn 80% or more of your **indexed monthly pre-disability earnings**.

After benefits have been paid for 24 months **partially disabled** means **you** are not **totally disabled** and that while actually working in an occupation, as a result of **sickness** or **injury you** are unable to engage with reasonable continuity in that or in

any other occupation in which **you** could reasonably be expected to perform satisfactorily in light of your age, education, training, experience, station in life, and physical and mental capacity.

**PAYABLE CLAIM** means a claim for which Unum is liable under the terms of the policy.

**PHYSICIAN** means:

- a person who is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction and is performing tasks that are within the limits of his or her medical license; or
- a person with a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients.

Unum will not recognize **you**, or your spouse, children, parents or siblings as a **physician** for a claim that **you** send to **us**.

**POLICYHOLDER** means the San Diego American Indian Health Center, to whom the policy is issued.

**RECURRENT DISABILITY** means a **disability** which reoccurs after your **disability** ends and is due to the same cause(s) as your prior **disability** for which Unum made a disability payment.

**REGISTERED DOMESTIC PARTNER** means the person named in your declaration of domestic partnership that has been filed with the Secretary of State of California.

**REGULAR CARE** means:

- **you** personally visit a **physician** as frequently as is medically required, to effectively manage and treat your disabling condition(s); and
- **you** are receiving appropriate medical treatment and care for your disabling condition(s), which conforms with generally accepted medical standards.

**RETIREMENT PLAN** means a defined contribution plan or defined benefit plan as defined in Section 402 of the Internal Revenue Code including any future amendments which affect the definition.

**SALARY CONTINUATION OR ACCUMULATED SICK LEAVE** means continued payments to **you** by your **Employer** of all or part of your **monthly pre-disability earnings**, after **you** become disabled as defined by the policy. This continued payment must be part of an established plan maintained by your **Employer** for the benefit of all **employees** covered under the policy. **Salary continuation or accumulated sick leave** does not include compensation paid to **you** by your **Employer** for work **you** actually perform after your **disability** begins.

**SICKNESS** means an **illness** or disease.

**SUBSTANTIAL AND MATERIAL ACTS** means the important tasks, functions and operations generally required by employers from those engaged in your **usual occupation** that cannot be reasonably omitted or modified.

In determining what **substantial and material acts** are necessary to pursue your **usual occupation**, **we** will first look at the specific duties required by your **Employer**. If **you**

are unable to perform one or more of these duties with reasonable continuity, **we** will then determine whether those duties are customarily required of other individuals engaged in your **usual occupation**.  If any specific material duties required of **you** by your **Employer** differ from the material duties customarily required of other individuals engaged in your **usual occupation**, then **we** will not consider those duties in determining what **substantial and material acts** are necessary to pursue your **usual occupation**.

**TOTAL DISABILITY** means, for the first 27 months, that as a result of **sickness** or **injury you** are unable to perform with reasonable continuity the **substantial and material acts** necessary to pursue your **usual occupation** in the usual and customary way.

After benefits have been paid for 24 months of **disability**, **total disability** means that as a result of **sickness** or **injury you** are not able to engage with reasonable continuity in any occupation in which **you** could reasonably be expected to perform satisfactorily in light of your age, education, training, experience, station in life, and physical and mental capacity.

**USUAL OCCUPATION** means the **substantial and material acts you** are routinely performing for your **Employer** when your **disability** begins.

**WAITING PERIOD** means the continuous period of time that **you** must be in **active employment** in an eligible group before **you** are eligible for coverage under the policy.

**WE,  US** and **OUR** means Unum Life Insurance Company of America.

**YOU** means an **employee** who is eligible for Unum coverage.

## Additional Claim and Appeal Information

### APPLICABILITY OF ERISA

If this policy provides benefits under a Plan which is subject to the Employee Retirement Income Security Act of 1974 (ERISA), the following provisions apply. Whether a Plan is governed by ERISA is determined by a court, however, your Employer may have information related to ERISA applicability.  If ERISA applies, the following items constitute the Plan:  the additional information contained in this document, the policy, including your certificate of coverage, and any additional summary plan description information provided by the Plan Administrator.  Benefit determinations are controlled exclusively by the policy, your certificate of coverage, and the information in this document.

### HOW TO FILE A CLAIM

If you wish to file a claim for benefits, you should follow the claim procedures described in your insurance certificate.  To complete your claim filing, Unum must receive the claim information it requests from you (or your authorized representative), your attending physician and your Employer.  If you or your authorized representative has any questions about what to do, you or your authorized representative should contact Unum directly.

### CLAIMS PROCEDURES

Unum will give you notice of the decision no later than 45 days after the claim is filed.  This time period may be extended twice by 30 days if Unum both determines that such an extension is necessary due to matters beyond the control of the Plan and notifies you of the circumstances requiring the extension of time and the date by which Unum expects to render a decision.  If such an extension is necessary due to your failure to submit the information necessary to decide the claim, the notice of extension will specifically describe the required information, and you will be afforded at least 45 days within which to provide the specified information.  If you deliver the requested information within the time specified, any 30 day extension period will begin after you have provided that information.  If you fail to deliver the requested information within the time specified, Unum may decide your claim without that information.

If your claim for benefits is wholly or partially denied, the notice of adverse benefit determination under the Plan will:

- state the specific reason(s) for the determination;

- reference specific Plan provision(s) on which the determination is based;

- describe additional material or information necessary to complete the claim and why such information is necessary;

- describe Plan procedures and time limits for appealing the determination, and your right to obtain information about those procedures and the right to bring a lawsuit under Section 502(a) of ERISA following an adverse determination from Unum on appeal; and

- disclose any internal rule, guidelines, protocol or similar criterion relied on in making the adverse determination (or state that such information will be provided free of charge upon request).

Notice of the determination may be provided in written or electronic form.  Electronic notices will be provided in a form that complies with any applicable legal requirements.

## APPEAL PROCEDURES

You have 180 days from the receipt of notice of an adverse benefit determination to file an appeal.  Requests for appeals should be sent to the address specified in the claim denial.  A decision on review will be made not later than 45 days following receipt of the written request for review.  If Unum determines that special circumstances require an extension of time for a decision on review, the review period may be extended by an additional 45 days (90 days in total).  Unum will notify you in writing if an additional 45 day extension is needed.

If an extension is necessary due to your failure to submit the information necessary to decide the appeal, the notice of extension will specifically describe the required information, and you will be afforded at least 45 days to provide the specified information.  If you deliver the requested information within the time specified, the 45 day extension of the appeal period will begin after you have provided that information.  If you fail to deliver the requested information within the time specified, Unum may decide your appeal without that information.

You will have the opportunity to submit written comments, documents, or other information in support of your appeal.  You will have access to all relevant documents as defined by applicable U.S. Department of Labor regulations.  The review of the adverse benefit determination will take into account all new information, whether or not presented or available at the initial determination.  No deference will be afforded to the initial determination.

The review will be conducted by Unum and will be made by a person different from the person who made the initial determination and such person will not be the original decision maker's subordinate.  In the case of a claim denied on the grounds of a medical judgment, Unum will consult with a health professional with appropriate training and experience.  The health care professional who is consulted on appeal will not be the individual who was consulted during the initial determination or a subordinate.  If the advice of a medical or vocational expert was obtained by the Plan in connection with the denial of your claim, Unum will provide you with the names of each such expert, regardless of whether the advice was relied upon.

A notice that your request on appeal is denied will contain the following information:

- the specific reason(s) for the determination;

- a reference to the specific Plan provision(s) on which the determination is based;

- a statement disclosing any internal rule, guidelines, protocol or similar criterion relied on in making the adverse determination (or a statement that such information will be provided free of charge upon request);

- a statement describing your right to bring a lawsuit under Section 502(a) of ERISA if you disagree with the decision;

- the statement that you are entitled to receive upon request, and without charge, reasonable access to or copies of all documents, records or other information relevant to the determination; and

- the statement that "You or your plan may have other voluntary alternative dispute resolution options, such as mediation.  One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency".

Notice of the determination may be provided in written or electronic form.  Electronic notices will be provided in a form that complies with any applicable legal requirements.

Unless there are special circumstances, this administrative appeal process must be completed before you begin any legal action regarding your claim.

## OTHER RIGHTS

Unum, for itself and as claims fiduciary for the Plan, is entitled to legal and equitable relief to enforce its right to recover any benefit overpayments caused by your receipt of deductible sources of income from a third party.  This right of recovery is enforceable even if the amount you receive from the third party is less than the actual loss suffered by you but will not exceed the benefits paid you under the policy.  Unum and the Plan have an equitable lien over such sources of income until any benefit overpayments have been recovered in full.

## DELEGATION OF AUTHORITY

The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group authority to make benefit determinations under the Plan.  Unum and Unum Group may act directly or through their employees and agents or further delegate their authority through contracts, letters or other documentation or procedures to other affiliates or entities.

## HOW UNUM DETERMINES YOUR ELIGIBILITY FOR BENEFITS

Unum, and not your Employer or Plan Administrator, has the responsibility to fairly, thoroughly, objectively and timely investigate, evaluate and determine your eligibility for benefits for any claim you make on the policy.  We will:

- obtain, with your cooperation and authorization if required by law, only such information that is necessary to evaluate your claim and decide whether to accept or deny your claim for benefits.  We may obtain this information from your notice of claim, submitted proofs of loss, statements, or other materials provided by you or others on your behalf; or, at our expense we may obtain necessary information, or have you physically examined when and as often as we may reasonably require while the claim is pending.  In addition, and at your option and at your expense, you may provide us and we will consider any other information, including but not limited to, reports from a physician or other expert of your choice.  You should provide us with all information that you want us to consider regarding your claim;

- consider and interpret the policy and all information obtained by us and submitted by you that relates to your claim for benefits and make our determination of your eligibility for benefits based on that information and in accordance with the policy and applicable laws;
- if we approve your claim, review our decision to approve your claim for benefits as often as is reasonably necessary to determine your continued eligibility for benefits; and
- if we deny your claim, explain in writing to you the basis for an adverse determination in accordance with the policy.

In the event we deny your claim for benefits, in whole or in part, you can appeal the decision to us.  If you choose to appeal our decision, the process you must follow is set forth in the policy. If you do not appeal the decision to us, then the decision will be Unum's final decision.

### NOTICE OF PROTECTION PROVIDED BY
### CALIFORNIA LIFE AND HEALTH INSURANCE GUARANTEE ASSOCIATION

This notice provides a brief summary regarding the protections provided to policyholders by the California Life and Health Insurance Guarantee Association ("the Association"). The purpose of the Association is to assure that policyholders will be protected, within certain limits, in the unlikely event that the member insurer of the Association becomes financially unable to meet its obligations. Insurance companies licensed in California to sell life insurance, health insurance, annuities and structured settlement annuities are members of the Association. The protection provided by the Association is not unlimited and is not a substitute for consumers' care in selecting insurers. This protection was created under California law, which determines who and what is covered and the amounts of coverage.

Below is a brief summary of the coverages, exclusions and limits provided by the Association. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations or the rights or obligations of the Association.

### COVERAGE

#### Persons Covered

Generally, an individual is covered by the Association if the insurer was a member of the Association *and* the individual lives in California at the time the insurer is determined by a court to be insolvent. Coverage is also provided to policy beneficiaries, payees or assignees, whether or not they live in California.

#### Amounts of Coverage

The basic coverage protections provided by the Association are as follows:

#### Life Insurance, Annuities and Structured Settlement Annuities

For life insurance policies, annuities and structured settlement annuities, the Association will provide the following:

- Life Insurance
  - 80% of death benefits but not to exceed $300,000
  - 80% of cash surrender or withdrawal values but not to exceed $100,000

- Annuities and Structured Settlement Annuities
  - 80% of present value of annuity benefits, including net cash withdrawal and net cash surrender values but not to exceed 250,000

The maximum amount of protection provided by the Association to an individual, for all life insurance, annuities and structured settlement annuities is $300,000, regardless of the number of policies or contracts covering the individual.

#### Health Insurance

The maximum amount of protection provided by the Association to an individual, as of April 1, 2011, is $470,125. This amount will increase or decrease based upon changes in the health care cost component of the consumer price index to the date on which the insurer became an insolvent insurer.

## COVERAGE LIMITATIONS AND EXCLUSIONS FROM COVERAGE

The Association may not provide coverage for this policy.  Coverage by the Association generally requires residency in California.  You should not rely on coverage by the Association in selecting an insurance company or in selecting an insurance policy.

The following policies and persons are among those that are excluded from Association coverage:

- A policy or contract issued by an insurer that was not authorized to do business in California when it issued the policy or contract.
- A policy issued by a health care service plan (HMO), a hospital or medical organization, a charitable organization, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company, an insurance exchange, or a grants and annuities society.
- If the person is provided coverage by the guaranty association of another state.
- Unallocated annuity contracts; that is, contracts which are not issued to and owned by an individual and which do not guaranty annuity benefits to an individual.
- Employer and association plans to the extent they are self funded or uninsured.
- A policy or contract providing any health care benefits under Medicare Part C or Part D.
- An annuity issued by an organization that is only licensed to issue charitable gift annuities.
- Any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as certain investment elements of a variable life insurance policy or a variable annuity contract.
- Any policy of reinsurance unless an assumption certificate was issued.
- Interest rate yields (including implied yields) that exceed limits that are specified in Insurance Code Section 1607.02(b)(2)(C).

## NOTICES

Insurance companies or their agents are required by law to give or send you this notice. Policyholders with additional questions should first contact their insurer or agent.  To learn more about coverages provided by the Association, please visit the Association's website at www.califega.org, or contact either of the following:

California Life and Health Insurance
Guarantee Association
P.O. Box 16860
Beverly Hills, CA 90209-3319
(323) 782-0182

California Department of Insurance
Consumer Communications Bureau
300 South Spring Street
Los Angeles, CA 90013
(800) 927-4357

**Insurance companies and agents are not allowed by California law to use the existence of the Association or its coverage to solicit, induce or encourage you to purchase any form of insurance.  When selecting an insurance company, you should not rely on Association coverage.  If there is any inconsistency between this notice and California law, then California law will control.**

# EXHIBIT B

August 3, 2018

Joseph Bulfer
10523 Caminito Pollo
San Diego, CA 921226

RE:   Employment with San Diego American Indian Health Center

Dear Joe,

We regret to inform you that we are terminating your at-will employment with San Diego American Indian Health Center (SDAIHC). Your termination date is August 7, 2018, but you are immediately relieved of all duties. You are no longer to perform any services for SDAIHC, to bind SDAIHC to any contracts, or to represent yourself as affiliated with SDAIHC in any way. You will remain on payroll through August 7, 2018. Even though you remain on payroll through August 7, 2018, you are not to hold yourself out as an employee of SDAIHC or take any actions on behalf of SDAIHC. You will receive your final pay on August 7, 2018. That final pay will also include any accrued but unused vacation.

We believe you have the following SDAIHC property in your possession: Files, Documents, Personnel Files, Log in/Passwords to critical websites, possibly computer equipment. You are also in possession of SDAIHC property and documents at your home office. You are also in possession of passwords. Please ensure that property is returned/provided no later than August 7, 2018.

During the course of your employment, you had access to trade secrets, confidential information, and proprietary information ("Information"). Under California law, that Information is DAIHC's confidential trade secret information. SDAIHC reminds you that you must keep all Information strictly confidential and cannot reveal any information to any person nor use it for your own benefit. You must return all of SDAIHC's records and materials in your possession or under your control containing any Information. This includes all electronic Information. Any breach may irreparably harm and damage SDAIHC.

While we have no obligation to do so, SDAIHC is extending an offer of six months ($110,000) severance in exchange for your signature to a separation agreement. You will find that agreement attached to this letter. This offer expires if not accepted, in writing, by **August 29, 2018**. You will only receive the severance pay if you accept the terms of the separation agreement.

For future reference, please provide us with your current address or keep us updated in the near future of such information so that we may send out your 2018 W-2.



**TENCER**SHERMAN
ATTORNEYS AT LAW

**SAM G. SHERMAN** *Partner*

12520 High Bluff Dr., Suite 240     858.408.6902 *phone*
San Diego, CA 92130                 858.754.1260 *fax*
Sam@TencerSherman.com               www.TencerSherman.com

We appreciate your service to SDAIHC and wish you the best in the future.  Thank you for your service to the organization.

Sincerely,

Paula Brim
Chair, Board of Directors
San Diego American Indian Health Center

## EMPLOYEE SEPARATION AGREEMENT WITH RELEASE OF CLAIMS

This Employee Separation Agreement ("Agreement") is entered into by Joseph Bulfer ("Bulfer") and San Diego American Indian Health Center ("SDAIHC") as of the date it is signed by Bulfer.

The purpose of this Agreement is to confirm the terms and conditions of your termination and severance agreement. Your last day worked will be effective at the close of business on August 3, 2018. Your last day of employment is August 7, 2018. ("Date of Termination"). In exchange for signing and agreeing to adhere to the terms of the Release described below, SDAIHC will provide to you the following:

**WHEREFORE, SDAIHC and Bulfer ("Parties") agree as follows:**

1. **Compensation:** You will be paid all wages due through August 7, 2018.   You will be paid through August 7, 2018 whether or not you sign the Agreement.

2. **Severance Compensation:** In exchange for your signature to this Agreement, SDAIHC will provide you with six months' separation pay in the amount of one hundred ten thousand and zero cents ($100,000.00), less regular payroll deductions.  SDAIHC also agrees not to contest any unemployment claim.

3. **Payment Schedule:** SDAIHC will issue the Severance Pay in six equal monthly installments starting on the first of the month following the expiration of the revocation period defined in Paragraph 16.

4. **Payment in Full:**  By signing this Agreement, Bulfer acknowledges and agrees that the payment and benefits provided hereunder are in the complete satisfaction of any and all compensation due to Bulfer from SDAIHC, whether for services provided or otherwise, and that, except as expressly provided under this Agreement, no further compensation, severance payments or benefits of any kind are owed to Bulfer.

5. **Expense Reimbursement.**   Bulfer agrees that he has submitted his final expense reimbursement statement and required documentation reflecting all business expenses he incurred through that date, if any, for which he seeks reimbursement.  SDAIHC will reimburse Bulfer for expenses pursuant to  its standard business practice.

6. **General Release:** In consideration of payment of the Severance Pay, Bulfer hereby releases and forever discharges SDAIHC and each of its present and former predecessors, successors, parent companies, subsidiaries, affiliates, owners, stockholders, agents, members of the board of directors, officers and employees, contractors and all personnel acting by, through, under or in concert with them, from any and all manner of actions, suits, debts, liens, contracts, agreements, promises, liability, claims, demands, damages, loss, cost or expense, of any nature whatsoever, fixed or contingent arising out of or relating to your relationship with SDAIHC (hereinafter called "Claims"), which you now have or may hereafter have against SDAIHC, from the beginning of time to the date of this General Release including any Claims which you do not know or suspect to exist in SDAIHC's favor at the time you signed this General Release. You further acknowledge that this General Release extinguished any such Claim.

1

i. The Claims release includes any Claims arising out of, based upon, or relating to my employment, compensation, or termination from employment with SDAIHC, and any Claims arising out of, based upon, or related to Title VII of the Civil Rights Act of 1964, the Fair Labor Standards Act, the California Fair Employment and Housing Act, the California Labor Code, the Employee Retirement Income Security Act of 1974, the Age Discrimination in Employment Act, or any other state or federal law governing discrimination in employment, the payment of wages or employment benefits, breach of contract, fraud, defamation, infliction of emotional distress, breach of implied covenant of good faith and fair dealings, or wrongful discharge from employment.

7. **Civil Code 1542 Waiver:** Bulfer expressly waives and relinquishes all rights and benefits afforded by Section 1542 of the Civil Code of the State of California, which states as follows:

> "A General Release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

You acknowledge that you have read all this release including the above Civil Code section, and that you fully understand both the General Release and the Civil Code section.

8. **Solicitation of Current or Former Employees:** For 12 months following the effective date of this agreement, Bulfer will not solicit current or former employees of SDAIHC, including anyone who was employed by SDAIHC in the 12 months prior to Bulfer's termination or employed by SDAIHC in the 12 months after the termination of Bulfer's employment.

9. **Defamation and Disparaging Comments and/or Communications:** You promise not to make defamatory or disparaging comments and/or communications about SDAIHC. You will not contact any third party (including, but not limited to, clients, competitors, and employees) to discuss any events that occurred during your employment and/or termination from SDAIHC. This includes communicating, distributing, posting, or broadcasting any information about SDAIHC. Violation of the terms of this provision may subject you to personal liability under various state and federal statutes and common law claims, including, Defamation Per Se and intentional interference causes of action. You acknowledge that SDAIHC relied on the representations and promises in this Release in agreeing to pay you the benefits described in subsection 2.

10. **Confidentiality:** Bulfer agrees that the terms, fact, and amount of this Agreement and any discussions between Bulfer and SDAIHC regarding the termination are confidential; accordingly, Bulfer agrees not to disclose them to anyone except his immediate family, attorney, accountant, or other professional adviser to whom he must make disclosure in order for them to render professional services to him, or except as may be required by law. In response to any inquiry concerning Bulfer's absence, SDAIHC will simply state that Bulfer is no longer employed by SDAIHC in order to pursue other interests.

11. **Trade Secret Material:** You acknowledge that you have learned or acquired confidential information about SDAIHC's customers and suppliers. In order to prevent the misuse of confidential information and misappropriation of SDAIHC's trade secrets about those customers and suppliers, you agree that you will not use SDAIHC's confidential or trade secret information to solicit the business of customers (including any people or entities that were customers of SDAIHC during the term of your employment) of SDAIHC for services similar to those performed, or goods similar to those sold, by SDAIHC. You further acknowledge and agree that this non-solicitation provision is reasonable and necessary for SDAIHC to protect its trade secrets.

12. **Defend Trade Secrets Act of 2016 Notice:** Pursuant to the Defend Trade Secrets Act of 2016, Bulfer understands that an individual may not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document that is filed under seal in a lawsuit or other proceeding. Further, an individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the employer's trade secrets to the attorney and use the trade secret information in the court proceeding if the individual: (a) files any document containing the trade secret under seal; and (b) does not disclose the trade secret, except pursuant to court order.

13. **Return of SDAIHC Property:** In signing this Agreement, Bulfer gives SDAIHC assurance that he has returned to it any and all documents, materials and information (whether in hardcopy, on electronic media or otherwise) related to business (present or otherwise) of SDAIHC, and its Affiliates (as defined above), and all other property of SDAIHC and its Affiliates in Bulfer's possession or control. Further, Bulfer gives SDAIHC assurance that he has not retained any copy of any document, material or information of SDAIHC or any of its Affiliates. Recognizing that Bulfer's employment with SDAIHC has ended, Bulfer agrees that he will not, for any purpose attempt to access or use any SDAIHC computer or computer network or system. Further, Bulfer acknowledges that he has disclosed to SDAIHC all passwords necessary or desirable to enable SDAIHC to access all information, which he has password-protected on any of its computer equipment or on its computer network or system. For the purpose of this Agreement, "Affiliates" means all persons and entities directly or indirectly controlling, controlled by or under common control with SDAIHC, where control may be by the management authority or equity interest. This offer of Severance Pay is rescinded if SDAIHC discovers that Bulfer has not returned all SDAIHC property.

14. **Enforcement of Restrictive Covenants.** The Parties agree that the breach or threatened breach of Paragraphs 9-13 of this Agreement shall cause the non-breaching Party to suffer irreparable harm. In addition to all other remedies that the non-breaching Party may have at law or in equity for breach of this Agreement, the non-breaching Party shall have the right to injunctive relief. The provisions in this Section shall apply only to breaches or threatened breaches of Paragraphs 9-13 of this Agreement and shall not apply to any other paragraphs of this Agreement.

15. **Promises Not to Prosecute/Warranty of No Pending Claims.** Bulfer warrants and represents that he has not contacted any governmental agency for the purpose of initiating a

claim against SDAIHC or reporting potential legal violations by SDAIHC. Bulfer promises not to contact any governmental agency for the purpose of making a claim against SDAIHC or reporting alleged violations of law by SDAIHC. Bulfer represents and warrants that all other Claims have settled, adjudicated, or resolved and will promptly be dismissed with prejudice. Bulfer further warrants and represents that he will not be a member of any class of plaintiffs in any lawsuit or Governmental proceeding against SDAIHC in any venue or jurisdiction. Although SDAIHC disputes the existence and viability of any possible cause of action Bulfer may allege to have against it relating to any Government proceeding or otherwise, Bulfer warrants and represents that the value of the settlement received herein would be more than any possible compensation he could ever claim under any Government proceeding, regulatory or statutory claim, cause of action or lawsuit individually or as part of a class, and such, upon execution of this Agreement is not owed any compensation or wages of any kind by SDAIHC or any of its predecessors, successors, affiliates or related companies. Bulfer further agrees and acknowledges that the release contained in the Agreement herein will bar any claim by Bulfer to any monetary damages in connection with any Government claim or lawsuit covering matters covered by the Agreement or any aspect of his employment with SDAIHC, although nothing herein will be deemed to impair the Government's independent right to enforce the law.   Bulfer further warrants and represents that he will participate in the prosecution or defense of any such Government proceeding or lawsuit in any way related to SDAIHC absent Government or court compulsion.

16. **ADEA Claims.**  Bulfer expressly understands that, by signing this Agreement, he waives any claims under the Age Discrimination in Employment Act.  Bulfer understands that he enters into this Agreement either with the advice of counsel or that he explicitly waived his right to seek legal counsel in relation to this Agreement.  Bulfer expressly understands that he either has been given twenty-one (21) days to consider this release or that, by signing the Agreement below, has expressly waived that right.  Bulfer also understands that he has seven (7) days from signing to revoke this Agreement.

17. **Continuing Cooperation:**  As a material inducement to enter into this agreement, Bulfer agrees to cooperate with SDAIHC during the period that he receives the Separation Pay.  This cooperation includes, but is not limited to, making himself available to answer questions and provide information to SDAIHC.

18. **No Admission:**  It is understood and agreed that the payment of any money to you and the signing of this General Release does not in any way indicate that you have viable claims against SDAIHC or that SDAIHC admits any liability to you whatsoever.

19. **Legal Counsel:**  You are fully aware of your right to discuss any and all aspects of this matter with an attorney, and you have carefully read and fully understand this General Release.  You have not been forced into signing this General Release and you agree to all of its terms voluntarily.

   a.  You understand that should you breach this General Release, then you shall be liable to reimburse SDAIHC for all costs and expenses, including court costs and attorneys' fees, incurred to enforce SDAIHC's rights under this General Release.

   b.  In addition, if you breach this General Release, you must immediately pay SDAIHC an amount equal to that paid to you as consideration for this Release.

4

20. **Severability:** The provisions of this Agreement are severable, and if any one or more provisions may be determined to be judicially unenforceable, in whole or in part, the remaining provisions shall nevertheless be binding and enforceable.

21. **Successors and Assigns:** This Agreement shall be binding upon the Parties and their representatives, successors and assigns, and shall serve to the benefit of said Parties and all other persons and entities released.

22. **Modification:** This Agreement represents the entire understanding and agreement between the Parties with respect to the subject matter and cannot be amended, supplemented or modified except by an instrument in writing signed by the Parties against whom enforcement of such amendment, supplement or modifications is sought.

23. **Integration:** This Agreement sets forth the entire agreement and understanding between the Parties on the subject matter hereof, and supersedes all prior discussions and negotiations between them. This Agreement may be amended, modified, or supplemented only by a written instrument executed by the Parties. Should any of the provisions of this Agreement be declared or be determined to be illegal, void, invalid, or unenforceable by a court of competent jurisdiction, the validity of the remaining parts, terms or provisions shall not be affected, and the illegal or invalid part, term or provision shall not be deemed a part of this Agreement. It is the intention of the Parties that if any term or provision of this Agreement is capable of two constructions, one of which would render the term or provision valid, then the term or provision shall have the meaning that renders it valid.

24. **Applicable Law:** The validity, interpretation and performance of this Agreement shall be construed and interpreted according to the laws of the State of California.

THE PARTIES TO THIS AGREEMENT HAVE READ THE FOREGOING AGREEMENT AND FULLY UNDERSTAND EACH AND EVERY PROVISION CONTAINED HERIN. WHEREFORE, THE PARTIES HAVE EXECUTED THIS AGREEMENT ON THE DATES SHOWN BELOW.

| | | |
|---|---|---|
| Date | Joseph Bulfer | Print Name |

9/3/2018

Date

SDAIHC
By: Paula Brim, Chair, Board of Directors

# EXHIBIT C



**GUARDIAN®**  The Guardian Life Insurance
Company of America

Send to: Group Long Term Disability Claims, P.O. Box 14333, Lexington, KY 40512
For Customer Service: (800) 538-4583      Fax: (610) 807-8221
Documents can be returned electronically at www.GuardianAnytime.com. Click on "Secure Channel" on the Guardian Anytime home page.

## SECTION 2 - EMPLOYER/PLANHOLDER STATEMENT

### TO BE COMPLETED BY THE EMPLOYER/PLANHOLDER

| Employee/Member Name (Hereafter referred to as claimant) | Social Security Number | Date of Birth |
|---|---|---|
| JOSEPH E. BULFER | 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 | 10/24/1951 |

Claimant's Address (Street, City, State, Zip)
10523 CAMINITO PUELU    SAN DIEGO, CA   92126

### INFORMATION ABOUT THE EMPLOYER / PLANHOLDER

| Company's Name | Group Policy Number |
|---|---|
| SAN DIEGO AMERICAN INDIAN HEALTH CENTER | 00439935 |

| Address (Street, City, State, Zip) | Telephone Number |
|---|---|
| 2630 FIRST AVE.    SAN DIEGO, CA 92103 | 619-234-2158 |

| Name and address of division where claimant works (if different from above) | 5-digit claim branch code | Fax Number |
|---|---|---|
| | | |

### INFORMATION ABOUT THE CLAIMANT

| Date claimant was hired | Date claimant became insured under this plan | Insurance class: | Schedule at time last worked: |
|---|---|---|---|
| 11, 1, 2007 | 2, 1, 2008 | UNKNOWN | 8 hours per day 5 days per week |

Was the claimant insured under your prior LTD policy? ☑ Yes ☐ No  If Yes, please provide   Name of prior carrier:
the effective and termination dates of coverage: 2 / 1 / 2008 Through 8 / 31 / 2018    UNUM

Has the claimant been terminated? ☑ Yes ☐ No If Yes, date:____/____/____   Reason: AT WILL
Would you be willing to rehire this person? ☐ Yes ☑ No   Reason:
Was the claimant on non-discriminatory family leave when disability began? ☐ Yes ☑ No
Date leave of absence started under Family Leave Act ____/____/____
Did LTD insurance continue while on family leave? ☐ Yes ☑ No

### INFORMATION NEEDED FOR WITHHOLDING AND REPORTING TAXES

Contributions to the cost of this insurance:
100 % paid by employer   ☐ Check here if claimant elected a bonus back/gross up arrangement (IRS Ruling 2004-55) on a Post Tax basis
____% paid by claimant   ☐ Pre-Tax ☐ Post-Tax
Is the LTD benefit exempt from FICA SS? ☐ Yes ☐ No        Is the LTD benefit exempt from FICA Medicare? ☐ Yes ☐ No

### INFORMATION ABOUT THE CLAIM

| What was the claimant's regular job? | How long had the claimant been performing his/her regular job? |
|---|---|
| CHIEF EXECUTIVE OFFICER | 11/1/2007 THROUGH 8/3/2018 |

Was the claimant performing his regular job on his or her last day at work? ☑ Yes ☐ No   If No, Please explain _____
If no, how long had this claimant been performing this other job? _____

| Last day claimant worked | On that day, did the claimant work a full day? |
|---|---|
| 8 / 3 / 2018 | ☐ Yes ☑ No   If No, how many hours were worked? 6 hours |

| Reason for leaving work: ☞ | Date claimant is expected/did return to work |
|---|---|
| ☑ dismissed ☐ leave of absence ☐ disability | ____/____/____   Full time? ☐ Yes ☑ No |
| ☐ resigned ☐ retired ☐ layoff | Part time? ☐ Yes ☑ No |

Is the claimant's condition work related? | Has a Workers' Compensation claim or similar claim been filed?
☐ Yes ☐ No  UNKNOWN | ☐ Yes ☑ No   If Yes, send initial report of illness or injury and award notice.
Name, address and phone number of that benefit provider

### INFORMATION ABOUT YOUR PENSION PLAN (Do not complete for maternity claim.)

Do you have a pension plan? | If yes, what type? | ☐ Defined Benefit | ☐ 401 K | ☐ Other (specify)
☐ Yes ☑ No | (Check as many as applicable) | ☐ Defined Contribution | ☐ Profit Sharing |

Is the claimant eligible for your pension plan? ☐ Yes ☐ No   If eligible, does the claimant participate? ☐ Yes ☐ No
If No, why?                                  If No, why?

If the claimant is participating, when is he or she eligible for benefits under the plan? ____/____/____
Is there a Disability Retirement option available to this claimant? ☐ Yes ☐ No

### INFORMATION ABOUT YOUR JOB ACCOMMODATION OR RETURN-TO-WORK POLICIES

Does your company have a job-holding policy? ☑ Yes ☐ No If yes, please explain FMLA REQUIREMENTS
What is the name, title, and telephone number of the person we should contact to discuss return to work or job accommodation opportunities?

WILLIAM GUARDADO, HR MANAGER, 619-234-2158 × 107

## INFORMATION ABOUT THE CLAIMANT'S SALARY

Average earnings excluding bonus, overtime and special compensation as of the most recent redetermination date:

$ 220,000　☐ Week　☐ Month　☑ Year

Date of last salary increase　11 / 1 / 2017

Claimant is paid:
☐ hourly　☑ Salary　☐ W2 earnings _____
☐ by partnership　☐ commissions only*　☐ salary & commissions*
☐ salary & bonus*　☐ salary & commissions*
*Please provide average of bonus and commissions for 24 months preceding your plan's most recent redetermination date

Is this claimant eligible for salary continuation?
☐ Yes　☑ No　If Yes, what is the amount? $ _____　When did benefits begin? __/__/__　End? __/__/__

Has the claimant filed for Short Term Disability or State Disability benefits?
☑ Yes　☐ No　If Yes, what is the weekly amount? $ UNKNOWN　When did benefits begin? UNKNOWN　End? UNKNOWN

List any other sources of income to which the claimant is entitled as a result of this disability:

Information about the physical aspects of the claimant's job
Check the items below that relate to the claimant's job and complete the information requested. Use these definitions for the frequency of occurrences in an eight hour day
- **Not Applicable** means the person does not perform this activity
- **Frequently -** 2 ½ hours up to 5 ½ hours
- **Occasionally –** 15 minutes up to 2 ½ hours
- **Continuously –** 5 ½ hours and beyond

Frequency of Occurrence

| Activity | N/A | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| ☑ Standing | ☐ | ☑ | ☐ | ☐ |
| ☑ Walking | ☐ | ☑ | ☐ | ☐ |
| ☑ Sitting | ☐ | ☐ | ☑ | ☐ |
| ☑ Balancing | ☐ | ☐ | ☑ | ☐ |
| ☑ Bending | ☐ | ☑ | ☐ | ☐ |
| ☑ Kneeling | ☐ | ☑ | ☐ | ☐ |
| ☑ Crouching | ☐ | ☑ | ☐ | ☐ |
| ☑ Crawling | ☑ | ☐ | ☐ | ☐ |
| ☑ Reaching | ☐ | ☑ | ☐ | ☐ |
| ☑ Working overhead | ☑ | ☐ | ☐ | ☐ |
| ☑ Keyboard Use/Repetitive Hand Motion | ☐ | ☐ | ☐ | ☑ |
| ☑ Climbing | ☑ | ☐ | ☐ | ☐ |
| ☑ Driving | ☐ | ☑ | ☐ | ☐ |

| Activity | Description | Frequency | Weight |
|---|---|---|---|
| ☐ Pushing | | | lbs. |
| ☐ Pulling | | | lbs. |
| ☐ Lifting | | | lbs. |
| ☐ Carrying | | | lbs. |

Stress level　☐ Low　☐ Moderate　☐ High　☐ Very high　– UNKNOWN
Can the job be performed by alternating sitting and standing?　☑ Yes　☐ No
Claimant must use hands for repetitive action such as:

| | Right | | Left | |
|---|---|---|---|---|
| Simple grasping | ☑ Yes | ☐ No | ☑ Yes | ☐ No |
| Firm grasping | ☑ Yes | ☐ No | ☑ Yes | ☐ No |
| Fine manipulation | ☑ Yes | ☐ No | ☑ Yes | ☐ No |

Use feet for repetitive movements as in operating foot controls:
Right ☐ Yes ☐ No　Left ☐ Yes ☐ No　Both ☐ Yes ☑ No

## REQUIRED ATTACHMENTS AND SIGNATURE

Please attach a copy of the claimant's job description.
If salary is based on a W-2, K-1, 1099 or a similar document, attach a copy of the most recent document.
If you have medical information from the claimant's file relating to this disability, please attach copies.
If a work related claim is filed, send a copy of the initial report of injury or illness and award notice.

**Fraud Notice**
Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statements of claim containing any materially, false information, or conceals for purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and may also be subject to civil penalties, or denial of insurance benefits.
The laws of New York require the following statement appear:  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

WILLIAM GUARDADO　　　HR MANAGER　　　WILLIAM.GUARDADO@SDAIHC.ORG
Name (Please print or type)　　　Title　　　Email Address

_____　　　7/30/2019
Signature　　　Date

*EXHIBIT A*



**Job Description**

**Job Title:** Executive Director
**Reports To:** Board of Directors
**Direct Reports:** Board of Directors

San Diego
American Indian
Health Center

**Summary:** The Executive Director shall be responsible for the day-to-day operations of the corporation. The Executive Director shall oversee the financial, organizational, operational, and planning functions of the corporation working under the supervision of the Board of Directors and in accordance with the corporation's policies.

**Essential Duties and Responsibilities** The Executive Director shall be responsible for the following:

1. The day to day management of the corporation;
2. Oversight of organizational expenditures within guidelines established by the Board of Directors;
3. All personnel actions including hiring, firing, etc.;
4. Compliance with public and private contracts and grants;
5. Community, governmental, and public relations to ensure access to needed resources and other assistance;
6. Resource development for the corporation;
7. Advising the Board of Directors of trends in health care delivery, needs of the corporation, policy considerations, and other organizational needs; and,
8. Such other duties as assigned by vote of the Board of Directors.

**Organizational Relationship:** The Executive Director is responsible to the Board of Directors and is directly supervised by the Chairman of the Board.

**Authority:** The Executive Director has the following authority:

**Policy:** to implement all corporation policies and establish departmental policies;

**Personnel:** to hire, fire, set position salaries and descriptions, and set recruitment protocol, develop and implement all other personnel related functions, and take action to protect the agency against any malicious and disruptive acts performed by staff.

**Finances**: to authorize expenditures for organization within the limits of an approved budget. Can sign and commit the organization to contracts and grants within guidelines established by the Board of Directors.

**Public Relations**: to speak on behalf of the corporation on topics which effect the affairs of the corporation or the community served; and,

**Planning and Development**: to bring together appropriate resources needed to enhance and/or advance the mission of the corporation.

**Qualifications:** To perform this job successfully, an individual must be able to perform each essential duty satisfactorily. The requirements listed below are representative of the knowledge, skill, and/or ability required. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

**Education and/or Experience:** A Master's degree in public health, health care administration or a related field. At minimum a Bachelor's degree in one of the aforementioned fields, plus at least five years of progressive management experience in a health care setting.

**Language Skills:** Able to read, analyze, and interpret common scientific and technical journals, financial reports, and legal documents. Able to respond to common inquiries or complaints from customers, regulatory agencies, or members of the business community. Able to write speeches and articles for publication that conforms to prescribed style and format. Able to effectively present information to top management, public groups, and/or board of directors.

**Mathematical Skills:** Knowledge of general financial management and budgets. Able to work with mathematical concepts, such as probability and statistical inference, and fundamentals of plane and solid geometry and trigonometry. Able to apply concepts such as fractions, percentages, ratios, and proportions to practical situations.

**Reasoning Ability:** Able to define problems, collect data, establish facts, and draw valid conclusions. Able to interpret an extensive variety of technical instructions in mathematical or diagram form and deal with several abstract and concrete variables.

**Computer Skills:** To perform this job successfully, an individual should have knowledge of accounting software, database software, human resource systems, Internet software, spreadsheet software and word-processing software.

**Physical Demands:** The physical demands described here are representative of those that must be met by an employee to successfully perform the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

While performing the duties of this job, the employee is frequently required to stand and walk. The employee is occasionally required to sit; use hands to finger, handle, or feel; reach with hands and arms; talk and hear.

**Work Environment:** The work environment characteristics described here are representative of those an employee encounters while performing the essential functions of this job. Reasonable accommodations may be made to enable individuals with disabilities to perform the essential functions.

**Access:** See attached Minimum Necessary Matrix for extent of authorized access to Billing and Medical records.

**Acknowledgement:** The San Diego American Indian Health Center is an Equal Opportunity Employer. We encourage applications from all individuals regardless of race, religion, color, sex, pregnancy, national origin, sexual orientation, ancestry, age, marital status, physical or mental disability, or any other protected class, political affiliation, or belief.

Preference in filling vacancies is given to qualified Indian candidates in accordance with the Indian Preference Act of 1934 (Title 25, USC Section 472) and federal regulations.

I acknowledge that I have read and understand the attached job description. My signature below certifies that I am able to perform the essential duties and responsibilities of this position. I have also discussed any accommodations that I feel I might need to allow me to perform these essential functions. I agree to abide by all administrative and medical policies and protocols of the Health Center.

_Joseph E. Bulfer_
Signature                                    Date

_Joseph E. Bulfer_
Name (please print)                          Supervisor Signature

12/7/07

**Copy B**

| b Employer's Identification number 95-3397369 | 12a See instructions for Box 12 E $ 15312.60 | 1 Wages, tips, other compensation 159988.38 | 2 Federal income tax withheld 34536.00 |
|---|---|---|---|
| c Employer's name, address, and ZIP code | 12b $ | 3 Social security wages 128400.00 | 4 Social security tax withheld 7960.80 |
| SAN DIEGO AMERICAN INDIAN HEALTH CENTER | 12c $ | 5 Medicare wages and tips 175300.98 | 6 Medicare tax withheld 2541.86 |
| 2602 1ST AVE STE 105 | 12d $ | 7 Social security tips | 8 Allocated tips |
| SAN DIEGO CA 92103-6529 | This information is being furnished to the Internal Revenue Service | 9 Verification code | 10 Dependent care benefits |
| e Employee's first name and initial    Last name | Copy B To Be Filed with Employee's FEDERAL Tax Return | 11 Nonqualified plans | 13 Statutory employee / Retirement plan [X] / Third-party sick pay |
| 606089448 | | 14 Other | |
| JOSEPH E BULFER | | CA SDI | 1149.67 |
| 10523 CAMINITO POLLO | a Employee's soc. sec. no. 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 | | |
| SAN DIEGO CA 92126 | | | |
| f Employee's address and ZIP code | | | |
| 15 State CA | Employer's state I.D. No. 910-3777-0 | 16 State wages, tips, etc. 159988.38 | 17 State income tax 13981.28 | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement  2018  Department of the Treasury-Internal Revenue Service    OMB No. 1545-0008    Copy B To Be Filed With Employee's FEDERAL Tax Return

---

REV 12/29/18 OSP

**Copy 2 for State, City, or Local Tax Departments**

| b Employer's Identification number 95-3397369 | 12a See instructions for Box 12 E $ 15312.60 | 1 Wages, tips, other compensation 159988.38 | 2 Federal income tax withheld 34536.00 |
|---|---|---|---|
| c Employer's name, address, and ZIP code | 12b $ | 3 Social security wages 128400.00 | 4 Social security tax withheld 7960.80 |
| SAN DIEGO AMERICAN INDIAN HEALTH CENTER | 12c $ | 5 Medicare wages and tips 175300.98 | 6 Medicare tax withheld 2541.86 |
| 2602 1ST AVE STE 105 | 12d $ | 7 Social security tips | 8 Allocated tips |
| SAN DIEGO CA 92103-6529 | | 9 Verification code | 10 Dependent care benefits |
| e Employee's first name and initial    Last name | Copy 2 for State, City, or Local Tax Departments | 11 Nonqualified plans | 13 Statutory employee / Retirement plan [X] / Third-party sick pay |
| 606089448 | | 14 Other | |
| JOSEPH E BULFER | | CA SDI | 1149.67 |
| 10523 CAMINITO POLLO | a Employee's soc. sec. no. 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 | | |
| SAN DIEGO CA 92126 | | | |
| f Employee's address and ZIP code | | | |
| 15 State CA | Employer's state I.D. No. 910-3777-0 | 16 State wages, tips, etc. 159988.38 | 17 State income tax 13981.28 | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement  2018  Department of the Treasury-Internal Revenue Service    OMB No. 1545-0008    Copy 2 To Be Filed With Employee's STATE, CITY, or LOCAL Tax Departments

---

**Copy 2 — REISSUED STATEMENT**

| b Employer's Identification number 95-3397369 | 12a See instructions for Box 12 E $ 15312.60 | 1 Wages, tips, other compensation 159988.38 | 2 Federal income tax withheld 34536.00 |
|---|---|---|---|
| c Employer's name, address, and ZIP code | 12b $ | 3 Social security wages 128400.00 | 4 Social security tax withheld 7960.80 |
| SAN DIEGO AMERICAN INDIAN HEALTH CENTER | 12c $ | 5 Medicare wages and tips 175300.98 | 6 Medicare tax withheld 2541.86 |
| 2602 1ST AVE STE 105 | 12d $ | 7 Social security tips | 8 Allocated tips |
| SAN DIEGO CA 92103-6529 | | 9 Verification code | 10 Dependent care benefits |
| e Employee's first name and initial    Last name | Copy 2 for State, City, or Local Tax Departments | 11 Nonqualified plans | 13 Statutory employee / Retirement plan [X] / Third-party sick pay |
| 606089448 | | 14 Other | |
| JOSEPH E BULFER | | CA SDI | 1149.67 |
| 10523 CAMINITO POLLO | | | |
| SAN DIEGO CA 92126 | REISSUED STATEMENT | | |
| f Employee's address and ZIP code | a Employee's soc. sec. no. 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 | | |
| 15 State CA | Employer's state I.D. No. 910-3777-0 | 16 State wages, tips, etc. 159988.38 | 17 State income tax 13981.28 | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement  2018  Department of the Treasury-Internal Revenue Service    OMB No. 1545-0008    Copy 2 To Be Filed With Employee's STATE, CITY, or LOCAL Tax Departments

---

**Copy C — REISSUED STATEMENT**

| b Employer's Identification number 95-3397369 | 12a See instructions for Box 12 E $ 15312.60 | 1 Wages, tips, other compensation 159988.38 | 2 Federal income tax withheld 34536.00 |
|---|---|---|---|
| c Employer's name, address, and ZIP code | | 3 Social security wages 128400.00 | 4 Social security tax withheld 7960.80 |
| SAN DIEGO AMERICAN INDIAN HEALTH CENTER | $ | 5 Medicare wages and tips 175300.98 | 6 Medicare tax withheld 2541.86 |
| 2602 1ST AVE STE 105 | 12d $ | 7 Social security tips | 8 Allocated tips |
| SAN DIEGO CA 92103-6529 | This information is being furnished to the Internal Revenue Service. If you are required to file a tax return, a negligence penalty or other sanction may be imposed on you if this income is taxable and you fail to report it. | 9 Verification code | 10 Dependent care benefits |
| e Employee's first name and initial    Last name | | 11 Nonqualified plans | 13 Statutory employee / Retirement plan [X] / Third-party sick pay |
| 606089448 | | 14 Other | |
| JOSEPH E BULFER | Copy C For Employee's Records (see notice on back) | CA SDI | 1149.67 |
| 10523 CAMINITO POLLO | REISSUED STATEMENT | | |
| SAN DIEGO CA 92126 | a Employee's soc. sec. no. 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 | | |
| f Employee's address and ZIP code | | | |
| 15 State CA | Employer's state I.D. No. 910-3777-0 | 16 State wages, tips, etc. 159988.38 | 17 State income tax 13981.28 | 18 Local wages, tips, etc. | 19 Local income tax | 20 Locality name |

Form W-2 Wage and Tax Statement  2018  Department of the Treasury-Internal Revenue Service    OMB No. 1545-0008    Copy C For Employee's Records

# EXHIBIT D

# 8 Guardian®

August 30, 2019

Joseph Bulfer
10523 Caminito Pollo
San Diego, CA 92126

Guardian Life Insurance Company
Attn: LTD Claims Department
PO Box 14333
Lexington, KY 40512
www.guardiananytime.com

**Important information regarding the below referenced claim.**

| Claim Number:  000101146 |
|---|

Insured Name: Joseph Bulfer
Group Plan #:  00439935

Dear Joseph Bulfer:

We have been reviewing your claim under the Long-Term Disability (LTD) policy issued to San Diego American Indian Health Center and we find that you do not qualify for benefits under the terms of the policy. We received notice of your long-term disability claim submitted for disability commencing August 4, 2019. According to our records, your last date worked was August 3, 2019 and your long-term disability coverage terminated on August 3, 2019, therefore any period of disability commencing after this date is not covered under the Guardian plan. This letter contains a summary of our decision, the plan provisions on which this decision is based, and information on how to file an appeal.

## Decision Summary

As stated in the below mentioned plan provisions, to be eligible for disability benefits under this plan your disability must commence while you are insured under the plan and you must remain disabled and insured throughout the plan's 90-day elimination period.

You are claiming disability commencing August 4, 2019, however, the information received from your employer, San Diego American Indian Health Center, states that you worked 6 hours on August 3, 2019. Therefore, as you continued to work until August 3, 2019, the date your disability began would have been August 4, 2019. Since you were no longer employed by San Diego American Indian Health Center you are no longer covered under the plan.

Since your coverage terminated prior to your disability, you were no longer covered under the plan at the time you are claiming disability. Therefore, your disability commencing August 4, 2019 is not covered since you were no longer an eligible covered employee at San Diego American Indian Health Center. Consequently, we are unable to accept liability on this claim.

Please note, we have reviewed your claim only with regard to the decisions described herein. Because we determined that no benefits are payable as no initial proof of loss has been submitted, we have not further reviewed the claim to determine whether other provisions of the Plan have been met.

## Plan Provisions

Page 3 of 10    LD20190904800472000 1 9/4/2019 8:26:38 AM

**When Coverage End**

Your coverage will end on the first of the following dates:

- The date Your Active Full-Time Work ends for any reason, except as shown below under Continuation Of Coverage.
- The date You stop being an eligible Employee under this Certificate.
- The date You are no longer working in the United States and/or Canada, or no longer working outside of the United States for a United States based Employer in a country or region approved by Us. Any incidental business or personal travel outside of the United States and/or Canada, or outside of a country or region approved by Us, is covered. Such travel will be considered incidental if it is for a period not to exceed 30 consecutive days.
- The date the group Certificate ends, or is discontinued for a class of Employees to which You belong.
- The last day of the period for which required payments are made for You.
- The date You die.

You may have the right to continue certain group benefits for a limited time after Your coverage would otherwise end. Read this Certificate carefully for details and discuss with your Employer or administrator. Any provisions that allow continuation of such group benefits must be offered and administered on a fair and equitable basis.

**Active Work** or **Actively At Work** or **Actively Working:** These terms mean You are able to perform, and are performing, all of the regular duties of Your work for the Employer, on a Full-Time basis at:
- One of the Employer's usual places of business;
- Some place where the Employer's business requires You to travel; or
- Any other place You and the Employer have agreed on for Your work.

**Disability or Disabled:**
These terms, when used alone, mean (a) Total Disability or Totally Disabled; or (b) Partial or Residual Disability.

**Total Disability or Totally Disabled** means that as a result of Sickness or Injury, during the Elimination Period and the Own Occupation period, You are not able to perform with reasonable continuity the substantial and material acts necessary to pursue Your Usual Occupation and You are not working in Your Usual Occupation. After the end of the Own Occupation period, Total Disability or Totally Disabled means that as a result of Sickness or Injury You are not able to engage with reasonable continuity in any occupation in which You could reasonably be expected to perform satisfactorily in light of Your age, education, training, experience, station in life, and physical and mental capacity.

Substantial and material acts means the important tasks, functions and operations generally required by Employers from those engaged in Your Usual Occupation that cannot be reasonably omitted or modified.

In determining what substantial and material acts are necessary to pursue Your Usual Occupation, We will first look at the specific duties required by the Employer or job. If You are unable to perform one or more of these duties with reasonable continuity, We will then determine whether those duties are customarily required of other persons engaged in Your Usual Occupation. If any specific, material duties required of You by the Employer or job differ from the material duties customarily required of other persons engaged in Your Usual Occupation, then We will not consider those duties in determining what substantial and material acts are necessary to pursue Your Usual Occupation.

Usual Occupation may be interpreted to mean the employment, business, trade or profession that involves the substantial and material acts of the occupation You were regularly performing for the Employer when the disability began. Usual Occupation is not necessarily limited to the specific job You performed for the Employer.

**Partial or Residual Disability** means You are not Totally Disabled and that while actually working in an occupation, as a result of Sickness or Injury, You are unable to engage with reasonable continuity in that or any other occupation in which You could reasonably be expected to perform satisfactorily in light of Your age, education, training, experience, station in life, and physical and mental capacity.

**Elimination Period:** This term means the period of time, as shown in the Schedule of Benefits, You must be Disabled, due to a covered Disability, before this Certificate's benefits are payable.

Any days during which You return to work on a Full-Time basis performing the major duties of Your Own Occupation, will not count toward the Elimination Period.

But You will continue to accumulate days of Disability for days for which You are working on less than a Full-Time basis during the Elimination Period as long as You meet the definition of Disability each Month during the Elimination Period.

If You are or become eligible under any other similar group income replacement plan while You are working during the Elimination Period, You will not be entitled to benefits from this Certificate.

If, at the end of the Elimination Period, You are not able to perform, on a Full-Time basis, the major duties of Your Own Occupation, but You earn or are able to earn 80% or more of Your Indexed Insured Earnings, the Elimination Period will be extended until the earlier of:

- Six Months from the date benefits otherwise would have commenced; or
- Until You are unable to earn 80% or more of Your Indexed Insured Earnings.

If at the end of this time period, You earn or are able to earn 80% or more of Your Indexed Insured Earnings, You must start a new Elimination Period.

We do not require You to complete an Elimination Period if:

- You were covered under a similar income replacement plan the Employer had with another carrier on the day before this Certificate starts; and
- Your Disability would have been a Recurring Disability under the prior plan had it remained in effect.

**Proof Of Loss:** Written proof of loss must be furnished to Us, in case of claim for loss for which this Certificate provides any periodic payment contingent upon continuing loss, within 90 days after the termination of the period for which We are liable, and in case of claim for any other loss, within 90 days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of Your legal capacity, later than one year from the time proof is otherwise required.

You are required to cooperate with Guardian in its evaluation of any claim for benefits. You must provide Proof of Loss at Your expense, consisting of the following listed below. Failure to provide this information may prevent, delay, suspend, reduce or terminate Your eligibility for benefits.

- The date Disability began.
- Your last day of Active Work.
- The cause of Disability.
- The extent of Disability, including limitations and restrictions preventing You from performing the major duties of Your Own Occupation and any Gainful Occupation.
- If Your occupation requires that You carry liability or malpractice insurance, information including, but not limited to: the policy, any applications for such coverage, and any changes to the terms and conditions of such policies prior to or after the first date of
- Disability.
- Objective Medical Evidence and Objective Proof of Your Restrictions and Limitations, beginning with the date Disability began.
- The prognosis of Disability.
- The name and address of all Doctors, hospitals and health care facilities where You have been treated for Your Disability since the date Disability began.

- Proof that You are currently receiving Regular and Appropriate
- Care from a Doctor and have been receiving that care from the date Disability began.
- Proof of Insured Earnings.
- Proof of Disability Earnings.
- Payroll or absence data from the Employer for the three Months prior to the date Disability began, or other period We specify.
- Proof of application for all other sources of income to which You may be entitled, that may affect Your payment from this Certificate.
- Proof of receipt of other income that may affect Your payment from this Certificate.
- Proof of identity and residency, including, but not limited to, a current government issued photo identification.
- Documentation of travel outside the United States.
- Any other information We may reasonably require to determine if You are Disabled and eligible for benefits and coverage under this Certificate.

You must provide Objective Medical Evidence from a Doctor who is not Yourself, or a relative by blood or marriage, or who is a business associate.

Proof of Insured Earnings and Disability Earnings may consist of:

- Copies of Your W-2 forms;
- Payroll records from Your Employer(s);
- Copies of Your U.S. individual income tax returns;
- Copies of the U.S. income tax returns from any business in which You hold an ownership or shareholder interest;
- A statement from a certified public accountant;
- Copies of any income records accepted or required by the IRS; or
- Any other records We deem necessary.

**Appeal Rights**

Should you wish to appeal this decision, you need to submit your reasons for appeal in **writing** and provide Guardian with documented proof that you were an active full-time eligible covered employee as of August 4, 2019 and that you continued to be employed by San Diego American Indian Health Center.

You may include any other information that you believe necessary to your appeal.

We regret that our decision could not have been more favorable to you; however, we must abide by the terms of the plan issued to San Diego American Indian Health Center. Nothing in this letter should be construed as a waiver of any of the Guardian Life Insurance Company of America's rights and defenses under the above captioned Plan, and all of these rights and defenses are reserved to the Company, whether or not specifically mentioned herein.

Upon request, we will provide, without charge, copies of documents, records and/or other relevant claim information. Upon receipt of your written request, we will provide a copy of our internal guidelines which may have been relied on in making this determination.

LD2019090480047200001 9/4/2019 8:26:38 AM    Page 6 of 10

In the event that your claim is subject to the Employee Retirement Income Security Act of 1974 ("the Act"), you have the right to bring civil action under section 502(a) of the Act following an adverse benefit determination on review. Your failure to request a review within 180 days of the date of this letter may constitute a failure to exhaust the administrative remedies available under the Act and may affect your ability to bring a civil action under the Act.

For further instructions on how to appeal this decision, please refer to the attached document. Your appeal should be sent to the following address:

The Guardian Life Insurance Company of America
**Attention: Appeals Committee**
Group LTD Claims
PO Box 14333
Lexington KY 40512

If you have any questions, please contact our Customer Service Department at 800 538 4583.

Sincerely,

# Tiffany D.

GROUP LTD CLAIMS DEPARTMENT
Toll-Free: 800 538 4583
Fax:  610 807 8221
Secure Email: www.guardiananytime.com, click on "Secure Channel" then select group_ltd_claims@glic.com

Enclosure: ERISA

**IMPORTANT NOTICE:**  If you have **group term life insurance:**

- the group plan issued to your employer/planholder may include a benefit to continue life coverage without payment of premium (extended life benefit) if you are totally disabled. Please refer to your certificate booklet to determine if this benefit is included and for all applicable policy provisions.
- you may have the opportunity to convert your group life coverage to an individual life insurance policy upon termination of your life coverage. If you have not inquired about this conversion, please contact your employer/planholder **immediately** to discuss your options for continuing your life insurance. The timeframe allowed for conversion is limited; please refer to your certificate booklet for details on your conversion rights. If you have any questions regarding conversion, please contact our National Conversion Unit at 800 433 5982, ext. 5696.

LD2019090480047200001 9/4/2019 8:26:38 AM

# 8 Guardian·

**IF ERISA APPLIES – PROCEDURES FOR DISABILITY CLAIMS**

## HOW TO APPEAL THIS DECISION

You have the right to appeal this decision under regulations specified by the Employee Retirement Income Security Act (ERISA) 1974, as amended. You need to:

- Submit your formal request for reconsideration in writing within 180 days of the date you receive the attached letter with the additional medical and/or other information mentioned within the letter. Please include your claim and plan number and address your correspondence and enclosures to:

    The Guardian Life Insurance Company of America
    Attn: Appeals Committee
    PO Box 14333
    Lexington, KY 40512

Guardian will notify you of its decision within 45 days of receipt of your written request for review. If special circumstances require an extension of time for a decision on review, the review period may be extended by an additional 45 days (90 days in total). Guardian will notify you in writing if an additional 45-day extension is needed. If an extension is necessary due to your failure to submit the information necessary to decide the appeal, the notice of extension will specifically describe the required information, and you will be afforded at least 45 days from receipt of the notice to provide the specified information. If you deliver the requested information within the time specified, the 45-day extension of the appeal period will begin after you have provided the information. If you fail to deliver the requested information within the time specified, we may decide your appeal without that information.

You will have the opportunity to submit written comments, documents, or other information in support of your appeal. You will have access to all relevant documents as defined by applicable U.S. Department of Labor regulations. The review of the adverse benefit determination will take into account all new information, whether or not presented or available at the initial determination. No deference will be afforded to the initial determination.

The review will be conducted by us. Such review will be conducted by a person different from the person who made the initial determination and such person will not be the original decision maker's subordinate. In the case of a claim denied on medical judgment, we will consult with a health professional with appropriate training and experience. The health care professional who is consulted on appeal will not be the individual who was consulted during the initial determination or a subordinate of that individual. If the advice of a medical or vocational expert was obtained in connection with the denial of your claim, we will provide you with the names of each such expert, regardless of whether the advice was relied upon.

A notice that your request on appeal is denied will contain the following information:

(a)     the specific reason(s) for the appeal determination;

(b)     a reference to the specific Plan provision(s) on which the determination is based;

(c)     a statement disclosing any internal rule, guideline, protocol or similar criterion relied on in making the adverse benefit determination (or a statement that such information will be provided free of charge upon request); or a statement that no internal rule, guideline, protocol or similar criterion was relied upon in making the adverse benefit determination;

(d)     if applicable, an explanation of the basis of disagreement with or not following the views presented by you, of health care professionals who treated you and vocational professionals who evaluated you;

(e)     if applicable, an explanation of the basis for disagreeing with or not following the views of any medical or vocational expert whose advice was obtained on our behalf in connection with the adverse determination, without regard to whether the advice was relied upon in making the determination;

(f)     if applicable, an explanation of the basis for disagreeing with or not following a disability determination made by the Social Security Administration that you present to us;

(g)     a statement describing your right to bring a civil suit under Section 502(a) of the Employee Retirement Income Security Act of 1974 which shall also describe any applicable contractual limitations period that applies to your right to bring such an action, including the calendar date on which the contractual limitations period expires for the claim;

(h)     a statement that you are entitled to receive upon request, and without charge, reasonable access to copies of documents, records or other information relevant to the determination; and

(i)     a statement that "you or your plan may have other alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency."

Notice of the determination may be provided in written or electronic form. Electronic notices will be provided in a form that complies with any applicable legal requirements.

In addition to any legal rights you may have under section 502(a), if you believe that we have violated ERISA's procedural requirements, you may request that we review any claimed violation(s) and we will respond to you within ten days.

Guardian does not waive our defenses under the terms of the plan or as provided by law.

If you believe all or part of the claim has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance:

In California:          California Department of Insurance
                        Consumer Affairs Division – South Tower
                        300 South Spring Street
                        Los Angeles, CA 90013
                        Toll free – 800 927 4357
                        Phone – 213 897 8921
                        TDD: 800 482 4TDD (4883)
                        Website: www.insurance.ca.gov/01-consumers/

In compliance with your state insurance department, we are supplying you with the name and address of your insurance department. If you wish to contact them, their address is:

In Illinois:          Illinois Department of Insurance          OR          Illinois Department of Insurance
                      320 W. Washington Street                               122 South Michigan Avenue, 19th Floor
                      Springfield, IL 62767-0001                             Chicago, IL 60603
                      Toll free – 866 445 5364                               Phone – 312 814 2420
                      Fax – 217 782 5020                                     Fax – 312 814 5416

Revised August 12, 2019

LD20190904800472000I 9/4/2019 8:26:38 AM      Page 10 of 10

| In Nebraska | Nebraska Department of Insurance |
| | PO Box 82089 |
| | Lincoln, NE 68501-2089 |
| | Toll free – 877 564 7323 |
| | Phone - 402 471 2201 |

**In New Hampshire:**
New Hampshire Department of Insurance
21 South Fruit Street, Suite 14
Concord, NH 03301
Toll free – 800 852 3416
Fax – 603 271 1406

**In New Jersey:**
New Jersey Department of Banking & Insurance
Consumer Inquiry and Response Center (CIRC)
P O Box 471
Trenton, NJ 08625-0471
Toll free - 800 446 7467
Phone - 609 292 7272
Fax: 609 454 8468

**In New York:**
New York Department of Financial Services    OR    New York Department of Financial Services
Consumer Assistance Unit                            Walter Mahoney Office Bldg..
One Commerce Plaza                                  65 Court Street, Room 7
Albany, NY 12257                                    Buffalo, NY 14202
Toll free – 800 342 3736

New York Department of Financial Services
163 Mineola Blvd.
Mineola, NY 11501

**In Ohio:**
Ohio Department of Insurance
Consumer Services Division
50 W. Town Street, Third Floor
Suite 300
Columbus, OH 43215
Toll free – 800 686 1526
Phone - 614 644 2658

**In Tennessee:**
If you are a Tennessee resident, you may file a complaint with the department by contacting:

Tennessee Department of Insurance
Consumer Insurance Services
500 James Robertson Parkway
Nashville, Tennessee 37243
Toll free - 800 342 4029

Or you may submit the complaint request for review electronically to that section's complaint link for insurance complaints, currently found at:
https://tn.gov/commerce/topic/commerce-file-a-complaint.

Revised August 12, 2019

# EXHIBIT E

# THEODORA ORINGHER
COUNSELORS AT LAW

**THEODORA ORINGHER PC**
535 Anton Boulevard, Ninth Floor
Costa Mesa, California  92626-7109
T (714) 549-6200 • F (714) 549-6201
www.tocounsel.com

**JON MOWER**
jmower@tocounsel.com
(714) 549-6200
File No. 81633.09002

September 10, 2019

Guardian Life Insurance Company of America
Attn: Appeals Committee
Group LTD Claims
P.O. Box 14333
Lexington, KY 40512

     **Re:**    **Appeal from Denial of Claim No. 000101146**
              **Insured Name: Joseph E. Bulfer**
              **Former Employer: San Diego American Indian Center**
              **Unum Group Plan No. 00439935**

To Whom It May Concern:

     As you know, this law firm represents your insured, Joseph E. Bulfer.  We are authorized representatives of Mr. Bulfer as indicated in Section 1 of his Application for Long Term Disability Income Benefits dated July 30, 2019.  Please consider this letter an appeal from Guardian's denial of Claim No. 000101146 dated August 30, 2019.

     Guardian's denial letter provides the following Decision Summary:

          You are claiming disability commencing August 4, 2019, however, the information received from your employer, San Diego American Indian Health Center, states that you worked 6 hours on August 3, 2019. Therefore, as you continued to work until August 3, 2019, the date your disability began would have been August 4, 2019.  Since you were no longer employed by San Diego American Indian Health Center you are no longer covered under the plan.

          Since your coverage terminated prior to your disability, you were no longer covered under the plan at the time you are claiming disability. Therefore, your disability commencing August 4, 2019 is not covered since you were no longer an eligible covered employee at San Diego American Indian Health Center.  Consequently, we are unable to accept liability on this claim.

     To the contrary, Mr. Bulfer was covered under the terms of the plan when his disability began. Foremost, Guardian's summary must be corrected: Mr. Bulfer claimed his disability began August **3**, 201**8**—not August 4, 2019.  Guardian's denial letter materially misstates Mr. Bulfer's application,



**THEODORA ORINGHER**
COUNSELORS AT LAW

Guardian Life Insurance Company of America
September 10, 2019
Page 2 of 3

another copy of which is enclosed. Included in the application is an "Attending Physician's Statement" by David N. Spees, M.D. listing the date of onset of the disability was August 3, 2018 and that he advised Mr. Bulfer to cease work as of August 3, 2018. This comports with the event giving rise to the disability on that day—Mr. Bulfer's employer notifying him that he would be terminated effective August 7, 2018. Enclosed is his employer's termination letter dated August 3, 2018 for a termination date of August 7, 2018. Mr. Bulfer's electronic paystub, also enclosed, shows that he was paid through August 7, 2018 for 40 hours of work. Accordingly, Mr. Bulfer was employed through August 7, 2018 and was covered on the day his disability began, August 3, 2018.

Even if Mr. Bulfer's termination was somehow on August 3 (in contradiction of his employer's letter and paystub), he was still entitled to benefits because he incurred the disability while working. Again, Mr. Bulfer suffered severe major depression and continuing anxiety as a result of his employer informing him that he would be terminated at a later date.

Lastly, even assuming Mr. Bulfer was terminated on August 3 *and* assuming his disability did not start until after his shift, he would still be entitled to benefits. We cite the following provision of the policy setting forth when coverage ends:

### *WHEN DOES YOUR COVERAGE END?*

Your coverage(s) under the policy ends on the earliest of:

-the date the policy or your coverage under the policy is cancelled;
-the date you no longer are in an eligible group;
-the date your eligible group is no longer covered;
-the last day of the period for which you made any required contributions; or
-*the last day you are in active employment*.

However, your coverage will continue:

-while benefits are being paid
-while you are fulfilling the requirements of your elimination period, so long as premium is being paid; or
-in accordance with the layoff and leave of absence provisions of the policy.

(Emphasis added.)

Courts have analyzed Unum's disability policy language and whether insureds are covered on the last day of employment, even if the disability occurs after the employee's shift. The answer is "yes, the employee is still covered." *Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375, 379-80 (2nd Cir. 2002) (held insured covered in injury occurring the evening after her last employment shift and awarding attorneys' fees; "...Lauder's coverage continued through the whole of her last day of active



Guardian Life Insurance Company of America
September 10, 2019
Page 3 of 3

employment, rather than ending when she walked out of Coach's door for the last time"); *McClaugherty v. Unum Life Ins. Co. of Amer.*, 2008 WL 11429638 (S.D. W. Va. 2008) ("As the plan language makes clear, an employee is covered for a disability (as defined by the plan) that arises on or before 'the last day [the employee] is in active employment.'").

It is notable that Mr. Bulfer did not work 6 hours on August 3, 2018. He arrived at work at 9:00 a.m., took an hour lunch from noon to 1:00 p.m., then attended a meeting at 1:30 p.m. wherein he was informed the employer would terminate him effective August 7. He left the premises at about 2:00 p.m. that day. Thus Mr. Bulfer worked less than 4 hours. Even so, Guardian's rationale that Mr. Bulfer could not have incurred a disability on that day, because he logged too many hours, is preposterous. Mr. Bulfer incurred the disability—severe major depression and persistent anxiety—only after completing the large majority of time on that day. Law throughout the country provides that whether an employee works a full day *is not* grounds to reject the existence of a disability on that day. *Eichacker v. Paul Revere Life Ins. Co.*, 354 F.3d 1142, 1146, fn. 2 (9th Cir. 2004).

We hereby request copies of any and all documents, records, and/or other relevant claim information, including but not limited to any and all medical opinions in disagreement of Dr. Spees' opinion that the date of onset of the disability was August 3, 2018. We further request a copy of your internal guidelines and any and all communications with Mr. Bulfer's employer in regard to this claim or his employment.

The issues are simple, and the law is settled. And because Guardian has not requested more information, it must have everything needed to make a decision. This appeal should take no longer than 10 days from the date of this letter to decide. Please respond to this letter promptly. Should you have any questions or concerns, do not hesitate to contact me.

Very truly yours,

THEODORA ORINGHER PC

Jon Mower, Esq.

cc:    Joseph E. Bulfer

1179174.1/81633.09002

TERM DATE: AUG 7, 2018

August 3, 2018

Joseph Bulfer
10523 Caminito Pollo
San Diego, CA 921226

RE:    Employment with San Diego American Indian Health Center

Dear Joe,

We regret to inform you that we are terminating your at-will employment with San Diego American Indian Health Center (SDAIHC). Your termination date is August 7, 2018, but you are immediately relieved of all duties. You are no longer to perform any services for SDAIHC, to bind SDAIHC to any contracts, or to represent yourself as affiliated with SDAIHC in any way. You will remain on payroll through August 7, 2018. Even though you remain on payroll through August 7, 2018, you are not to hold yourself out as an employee of SDAIHC or take any actions on behalf of SDAIHC. You will receive your final pay on August 7, 2018. That final pay will also include any accrued but unused vacation.

We believe you have the following SDAIHC property in your possession: Files, Documents, Personnel Files, Log in/Passwords to critical websites, possibly computer equipment. You are also in possession of SDAIHC property and documents at your home office. You are also in possession of passwords. Please ensure that property is returned/provided no later than August 7, 2018.

During the course of your employment, you had access to trade secrets, confidential information, and proprietary information ("Information"). Under California law, that Information is DAIHC's confidential trade secret information. SDAIHC reminds you that you must keep all Information strictly confidential and cannot reveal any information to any person nor use it for your own benefit. You must return all of SDAIHC's records and materials in your possession or under your control containing any Information. This includes all electronic Information. Any breach may irreparably harm and damage SDAIHC.

While we have no obligation to do so, SDAIHC is extending an offer of six months ($110,000) severance in exchange for your signature to a separation agreement. You will find that agreement attached to this letter. This offer expires if not accepted, in writing, by **August 29, 2018**. You will only receive the severance pay if you accept the terms of the separation agreement.

For future reference, please provide us with your current address or keep us updated in the near future of such information so that we may send out your 2018 W-2.

We appreciate your service to SDAIHC and wish you the best in the future.  Thank you for your service to the organization.

Sincerely,

Paula Brim
Chair, Board of Directors
San Diego American Indian Health Center



**Preview Paycheck**

## Bulfer, Joseph E

PAY PERIOD 08/01/2018 - 08/07/2018

☐ Use Direct Deposit

### Earnings

| ITEM NAME | RATE | HOURS | WC CODE | CUSTOMER:JOB | CLASS | |
|---|---|---|---|---|---|---|
| Salary | 4,216.67 | 40.00 | Physician... | | 91 Administration | |
| | | | | | SICK AVAILABLE | 8.00 |
| | | | | | VACATION AVAIL | 288.00 |
| | | | | | SICK ACCRUED | |
| | | | | | VAC. ACCRUED | 9.00 |
| TOTALS | | 4,216.67 | 40.00 hrs | | ☐ Do not accrue sick/vac | |

### Other Payroll Items

| ITEM NAME | RATE | QUANTITY |
|---|---|---|
| Aflac-Hospital Int Care(Pr... | -57.46 | |
| Aflac-Personal Cancer (P... | -39.20 | |
| Co-Power VSP Sec. 125 (... | -9.34 | |
| Guardian Dental PPO (Pr... | -57.42 | |

### Employee Summary

| ITEM NAME | AMOUNT | YTD |
|---|---|---|
| Salary | 4,216.67 | 141,716.72 |
| Aflac-Hospital Int Care(Pretax) | -57.46 | -488.41 |
| Aflac-Personal Cancer (Pre-Tax) | -39.20 | -333.20 |
| Co-Power VSP Sec. 125 (Pre-Tax) | -9.34 | -79.78 |
| Guardian Dental PPO (Pre Tax) | -57.42 | -503.54 |
| Medicare Employee Addl Tax | 0.00 | 0.00 |
| Federal Withholding | -536.00 | -24,695.00 |
| Social Security Employee | 0.00 | -7,960.80 |
| Medicare Employee | -58.77 | -2,087.90 |
| CA- Withholding | -254.53 | -10,442.05 |

### Company Summary

| ITEM NAME | AMOUNT | YTD |
|---|---|---|
| CA- Employment Training ... | 0.00 | 0.00 |
| Social Security Company | 0.00 | 7,960.80 |
| Medicare Company | 58.77 | 2,087.90 |
| CA- Unemployment | 0.00 | 0.00 |

Check Amount: 3,203.95

Save & Close    Cancel    Help    Enter net/Calculate gross

---

**Preview Paycheck**

## Bulfer, Joseph E

PAY PERIOD 08/01/2018 - 08/07/2018

☐ Use Direct Deposit

### Earnings

| ITEM NAME | RATE | HOURS | WC CODE | CUSTOMER:JOB | CLASS | |
|---|---|---|---|---|---|---|
| Salary | 4,216.67 | 40.00 | Physic... | | 91 Administration | |
| | | | | | SICK AVAILABLE | 8.00 |
| | | | | | VACATION AVAIL | 288.00 |
| | | | | | SICK ACCRUED | |
| | | | | | VAC. ACCRUED | 9.00 |
| TOTALS | | 4,216.67 | 40.00 hrs | | ☐ Do not accrue sick/vac | |

### Other Payroll Items

| ITEM NAME | RATE | QUANTITY |
|---|---|---|
| Aflac-Hospital Int Care(Pr... | -57.46 | |
| Aflac-Personal Cancer (P... | -39.20 | |
| Co-Power VSP Sec. 125 (... | -9.34 | |
| Guardian Dental PPO (Pr... | -57.42 | |

### Employee Summary

| ITEM NAME | AMOUNT | YTD |
|---|---|---|
| Aflac-Hospital Int Care(Pretax) | -57.46 | -488.41 |
| Aflac-Personal Cancer (Pre-Tax) | -39.20 | -333.20 |
| Co-Power VSP Sec. 125 (Pre-Tax) | -9.34 | -79.78 |
| Guardian Dental PPO (Pre Tax) | -57.42 | -503.54 |
| Medicare Employee Addl Tax | 0.00 | 0.00 |
| Federal Withholding | -536.00 | -24,695.00 |
| Social Security Employee | 0.00 | -7,960.80 |
| Medicare Employee | -58.77 | -2,087.90 |
| CA- Withholding | -254.53 | -10,442.05 |
| CA- Disability | 0.00 | -1,149.67 |

### Company Summary

| ITEM NAME | AMOUNT | YTD |
|---|---|---|
| CA- Employment Training ... | 0.00 | 0.00 |
| Social Security Company | 0.00 | 7,960.80 |
| Medicare Company | 58.77 | 2,087.90 |
| CA- Unemployment | 0.00 | 0.00 |

Check Amount: 3,203.95

Save & Close    Cancel    Help    Enter net/Calculate gross

29423

San Diego American Indian Health Center

Joseph E Bulfer

FINAL CHECK 8/1/18-8/7/18     8/6/2018     3,203.95

BofA Checking     FINAL CHECK 8/1/18-8/7/18     3,203.95

*(LAST DAY : AUG 3, 2018*
*WORKED 3 1/2 hrs )*



**GUARDIAN®** The Guardian Life Insurance Company of America    **Application for Long Term Disability Income Benefits**

Send to: Group Long Term Disability Claims, P.O. Box 14333, Lexington, KY 40512
For Customer Service: (800) 538-4583    Fax: (610) 807-8221
Documents can be returned electronically at www.GuardianAnytime.com. Click on "Secure Channel" on the Guardian Anytime home page.

## SECTION 1 - CLAIMANT STATEMENT

**To be completed by the Employee/Member** (Be sure to answer ALL questions – Failure to do so may delay your claim review)

### INFORMATION ABOUT YOU

| First Name | Middle Initial | Last Name | Social Security Number |
|---|---|---|---|
| Joseph | E | Bulfer | 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 |

| Address of Residence | City | State | Zip |
|---|---|---|---|
| 10523 Caminito Pollo | San Diego | CA | 92126 |

| Telephone # | Cell # or alternate # | E-mail Address |
|---|---|---|
| 619-925-2910 | — | joebulfer @ att.net |

Date of Birth (Month, Day, Year): 10 / 29 / 1951    ☐ Male ☑ Female   ☐ Single ☑ Married   ☐ Widowed ☐ Divorced ☐ Other legal union

Your employer: San Diego American Indian Health    Group Policy #: 00439935    Occupation: Adm CEO
GR-979894-012

Please indicate the extent of your formal education (circle one). This information is needed to evaluate return to work potential.

Schooling Completed: 1 2 3 4 5 6 7 8 9 10 11 ⑫    Diploma: ☑ Yes ☐ No    GED: ☐ Yes ☐ No
Vocational or Trade School: 1 2 3 4    Field of Study: ___    Certificate or license obtained ☐ Yes ☐ No
College: 1 2 3 ④ Degree: ☑ Business Adm    Masters: ☑ Yes ☐ No    Doctorate: ☐ Yes ☐ No
② Accounting
Fields of Study: BACH /SCT    Business Adm
Military Service: ☐ Yes ☑ No    If yes, how many years of service? ___    Rank at discharge: ___
Branch: ___

Briefly describe your past work/volunteer experience for the last 20 years or attach resume. (Begin with your most recent job.)

| | Job Title | Duties | # of years worked |
|---|---|---|---|
| (a) | San Diego American United Health Chief Executive Officer | SEE Job Desc. from Employer - All Admin/Financial Func... | 11 (NOV07-AUG'18) |
| (b) | TorPac Indian Health Project Chief Executive Officer | Same AS (a) All Adm/Financ - Med... | 2 (2005-2006) |
| (c) | Self Employed - Healthcare Consultant | Health care Development - Medical alignment | 2 (2003-2005) |
| (d) | Scorpion Indian Health Council Chief Executive Officer | SAME AS (a) All Admin/Financ Functions | 15 (1988-2003) |

| Spouse's First Name | Last Name | Date of Birth (Month, Day, Year) |
|---|---|---|
| | | |

Do you authorize us to speak with someone other than yourself regarding your claim? ☑ Yes ☐ No If yes, advise of name, relationship and telephone # below:

| Name | Relationship | Telephone # |
|---|---|---|
| Jon Mower, Esq. | Attorney | 714-549-6200 |

Do you have any dependent children? ☐ Yes ☑ No If yes, name and birth date of each child

Do you have an appointed Durable Power of Attorney to handle your financial affairs? ☐ Yes ☑ No If yes, please attach a copy.

### INFORMATION ABOUT YOUR CLAIMED DISABILITY

Please provide the date you were first unable to work your regular work schedule due to your condition: 8 / 3 / 18 How many hours did you work that day? 6    (ACTUAL TIME 9-12 = 3hrs + 1-1:30 = 1/2 hrs = TOTAL 3 1/2 hours 9ar)
(Per William R)
Since that date, have you done any work? ☐ Yes ☑ No If yes, indicate dates worked, name of employer, and amount earned

Before you stopped working, did your condition require you to change your job, or the way you did your job? ☐ Yes ☑ No If yes, please explain

What job duties are you unable to perform due to your condition and why?
ALL - SEVERE PSYCHOLOGICAL & MENTAL INCAPACITATION DUE TO INAPPROPRIATE Termination OF EMPLOYMENT
WITH NO RECOURSE

If you have not returned to work, do you expect to? ☐ Yes ☐ No ☒ Unknown    If yes, Part time (date) ___/___/___    Full time (under Psych care) (date) ___/___/___    Would you be interested in vocational rehabilitation services to assist with your return to work? ☐ Yes ☒ No

What is or are your disabling condition(s)? Severe Biological (Mental Impairment, affective Disorder, Anxiety, Depression

What were your first symptoms? SAME AS ABOVE - Severe Psychological (Mental Impairment Anxiety, Depression

When did you first notice your symptoms? Immediately upon Discharge    Have you had this condition before? ☐ Yes ☒ No
If yes, when?

Hobbies previously performed: None - Work was my life
Hobbies you currently perform: ( None )
Dominant hand: ☒ Right ☐ Left
Primary language: English
Other languages: ___

Date you were first treated by a physician for the condition for which you are claiming disability: 08 / 16 / 18

Name of Physician David Spees, M.D.    Physician's Telephone # Ph (858) 521-2111    499-2905

Is your condition related to your employment? ☐ Yes ☒ No  If yes, please explain:
Condition caused by inappropriate termination of employment

Have you filed, or do you intend to file a Workers' Compensation Claim? ☐ Yes ☒ No  If yes, attach a copy of the award or denial.

If your disability was caused by an accident, answer the following questions:
When, where and how did the accident occur?
Condition caused by inappropriate termination of employment

If a police report was filed, attach a copy of the report.  Do you intend to file suit regarding this accident? ☒ Yes ☐ No  If yes, provide attorney name, address and telephone #:
Jon Mauer, Attorney  714-547-6200 ( for inappropriate termination of Employment )

## INFORMATION ABOUT YOUR CARE AND TREATMENT

| Family Physician Name David Spees, MD | | Specialty PRIMARY CARE | | |
| Address 16899 West Bernardo Drive | | City San Diego | State CA | Zip 92127 |
| Telephone # 858 - 521 499-2905 | Fax # 858 - 521 - 2111 | Dates Seen: Beginning 8/16/11 to Present | | |

List all other physicians, pharmacy, and hospitals you have seen for your condition (attach separate sheet, if needed)

| Physician Name Maya Cuevas, MD | | Specialty Primary Care + Psychiatrist Specialty | | |
| Address 326 S Melrose Dr, S-200 | | City Vista | State CA | Zip 92081 |
| Telephone # 866 - 228 - 2236 | Fax # 760 - 330 - 9350 | Dates Seen: 11-12-18 / to Present | | |

| Physician Name Marcela Kovarova, PsyD. | | Specialty Clinical Psychologist | | |
| Address 11770 Bernardo Plaza Court, S-370 | | City San Diego | State CA | Zip 92128 |
| Telephone # 858-673-3360 | Fax # 858-592-0884 | Dates Seen: 12-12-18 / to Present | | |

| Pharmacy Name (1) CVS  (2) Rite Aid | | Telephone # (1) 858-566-3491  (2) 858-566-3490 | Fax # | |
| Address (1) 8260 Mira Mesa Blvd  (2) 6185 Mira Mesa Blvd | | City (1) San Diego  (2) San Diego | State (1) CA  (2) CA | Zip (1) 92126  (2) 92126 |

| Hospital Name Scripps Mercy Hospital, San Diego | | Dates of Hospitalization: Heart Stent 4/11/11 to 4/12/19 | | |
| Address 4077 Fifth Avenue | | City San Diego | State CA | Zip 92103 |

**OTHER INCOME/BENEFITS**

Complete the sections below for any other income/benefits you have received/are receiving, or are eligible to receive during your disability. Please attach a copy of the award letter.

| Source of income | Amount(week/month) | Date claim was filed | Date payments began | Date payments ended |
|---|---|---|---|---|
| Sick pay or salary continuation | $ ⎯ | N/A | | |
| Earnings from work while disabled | $ ⎯ | N/A | | ⎯ |
| State Disability | $ ⁵1216 Weekly | 8/3/18 | 8/3/18 | Current (approx until 8-11-19 |
| Short Term Disability | $ ⎯ | | | |
| Workers' Compensation | $ ⎯ | | | |
| No-Fault Insurance | $ ⎯ | | | |
| Social Security Disability | $ ⎯ | | | |
| Social Security Retirement | $ ⎯ | | | |
| Pension/Disability | $ ⎯ | | | |
| Pension/Retirement | $ ⎯ | | | |
| Unemployment | $ ⎯ | | | |
| Other _____ | $ ⎯ | | | |

Please contact us immediately if any of the above sources of income changes.

**INFORMATION ABOUT TAX WITHHOLDING**

Federal law requires us to withhold income tax from your check only if you request us to do so. We are also required to send a report to your employer at the end of each calendar year showing your name, total amount of benefits paid to you, total amount withheld, if any, and your social security number. If your request for long term disability is approved and your benefit is taxable, please indicate on the line below the whole dollar amount or percentage to be withheld per month. (Minimum of $20.00)

$ ___0___ .00 or ___0___ %

**FRAUD NOTICE**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statements of claim containing any materially, false information, or conceals for purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and may also be subject to civil penalties, or denial of insurance benefits.

**The laws of New York require the following statement appear:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

✱ _Joseph E. Bifer_
   Joseph E. Bifer

Date ( 7/30/18
        gb



**GUARDIAN®** The Guardian Life Insurance Company of America

Send to: Group Long Term Disability Claims, P.O. Box 14333, Lexington, KY 40512
For Customer Service: (800) 538-4583     Fax: (610) 807-8221
Documents can be returned electronically at www.GuardianAnytime.com. Click on "Secure Channel" on the Guardian Anytime home page.

## SECTION 2 - EMPLOYER/PLANHOLDER STATEMENT

### TO BE COMPLETED BY THE EMPLOYER/PLANHOLDER

| Employee/Member Name (Hereafter referred to as claimant) | Social Security Number | Date of Birth |
|---|---|---|
| JOSEPH E. BULFER | 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 | 10/24/1951 |

Claimant's Address (Street, City, State, Zip)
10573 CAMINITO POLLO    SAN DIEGO, CA    92126

### INFORMATION ABOUT THE EMPLOYER / PLANHOLDER

| Company's Name | Group Policy Number |
|---|---|
| SAN DIEGO AMERICAN INDIAN HEALTH CENTER | 00439935 |

Address (Street, City, State, Zip)
2630 FIRST AVE.    SAN DIEGO, CA 92103

Telephone Number
619-234-2158

Name and address of division where claimant works (if different from above) | 5-digit claim branch code | Fax Number

### INFORMATION ABOUT THE CLAIMANT

| Date claimant was hired | Date claimant became insured under this plan | Insurance class: | Schedule at time last worked: |
|---|---|---|---|
| 11/1/2007 | 2/1/2008 | UNKNOWN | 8 hours per day 5 days per week |

Was the claimant insured under your prior LTD policy? ☑ Yes ☐ No  If Yes, please provide
the effective and termination dates of coverage: 2/1/2008 Through 8/31/2018

Name of prior carrier:
UNUM

Has the claimant been terminated? ☑ Yes ☐ No If Yes, date: ___/___/___ Reason: AT WILL

Would you be willing to rehire this person? ☐ Yes ☑ No  Reason:

Was the claimant on non-discriminatory family leave when disability began? ☐ Yes ☑ No
Date leave of absence started under Family Leave Act ___/___/___
Did LTD insurance continue while on family leave? ☐ Yes ☐ No

### INFORMATION NEEDED FOR WITHHOLDING AND REPORTING TAXES

Contributions to the cost of this insurance:
100 % paid by employer    ☐ Check here if claimant elected a bonus back/gross up arrangement (IRS Ruling 2004-55) on a Post Tax basis.
___% paid by claimant    ☐ Pre-Tax  ☐ Post-Tax
Is the LTD benefit exempt from FICA SS? ☐ Yes ☐ No    Is the LTD benefit exempt from FICA Medicare? ☐ Yes ☐ No

### INFORMATION ABOUT THE CLAIM

| What was the claimant's regular job? | How long had the claimant been performing his/her regular job? |
|---|---|
| CHIEF EXECUTIVE OFFICER | 11/1/2007 THROUGH 8/3/2018 |

Was the claimant performing his regular job on his or her last day at work? ☑ Yes ☐ No  If No, Please explain
If no, how long had this claimant been performing this other job?

| Last day claimant worked | On that day, did the claimant work a full day? |
|---|---|
| 8/3/2018 | ☐ Yes ☑ No  If No, how many hours were worked? 6 HOURS |

Reason for leaving work: to:
☑ dismissed  ☐ leave of absence  ☐ disability
☐ resigned  ☐ retired  ☐ layoff

Date claimant is expected/did return to work
___/___/___    Full time? ☐ Yes ☑ No
                      Part time? ☐ Yes ☑ No

Is the claimant's condition work related?
☐ Yes ☐ No UNKNOWN

Has a Workers' Compensation claim or similar claim been filed?
☐ Yes ☑ No    If Yes, send initial report of illness or injury and award notice.

Name, address and phone number of that benefit provider

### INFORMATION ABOUT YOUR PENSION PLAN (Do not complete for maternity claim.)

Do you have a pension plan?
☐ Yes ☑ No

If Yes, what type?
(Check as many as applicable)

☐ Defined Benefit    ☐ 401 K    ☐ Other (specify)
☐ Defined Contribution    ☐ Profit Sharing

Is the claimant eligible for your pension plan? ☐ Yes ☐ No
If No, why?

If eligible, does the claimant participate? ☐ Yes ☐ No
If No, why?

If the claimant is participating, when is he or she eligible for benefits under the plan? ___/___/___
Is there a Disability Retirement option available to this claimant? ☐ Yes ☐ No

### INFORMATION ABOUT YOUR JOB ACCOMMODATION OR RETURN-TO-WORK POLICIES

Does your company have a job-holding policy? ☑ Yes ☐ No If yes, please explain FMLA REQUIREMENTS
What is the name, title, and telephone number of the person we should contact to discuss return to work or job accommodation opportunities?

WILLIAM GUARDADO, HR MANAGER, 619-234-2158 × 107

## INFORMATION ABOUT THE CLAIMANT'S SALARY

| Average earnings excluding bonus, overtime and special compensation as of the most recent redetermination date: | Claimant is paid: |
|---|---|
| $ 220,000 ☐ Week ☐ Month ☑ Year | ☐ hourly ☑ Salary ☐ W2 earnings _____ <br> ☐ by partnership ☐ commissions only* ☐ salary & commissions* <br> ☐ salary & bonus* ☐ salary & commissions* |
| Date of last salary increase 11 / 1 / 2017 | *Please provide average of bonus and commissions for 24 months preceding your plan's most recent redetermination date |

Is this claimant eligible for salary continuation?
☐ Yes ☑ No  If Yes, what is the weekly amount? $ _____ When did benefits begin? ___/___/___ End? ___/___/___

Has the claimant filed for Short Term Disability or State Disability benefits?
☑ Yes ☐ No  If Yes, what is the weekly amount? $ UNKNOWN When did benefits begin? UNKNOWN / / End? UNKNOWN / /

List any other sources of income to which the claimant is entitled as a result of this disability:

Information about the physical aspects of the claimant's job
Check the items below that relate to the claimant's job and complete the information requested. Use these definitions for the frequency of occurrences in an eight hour day
- Not Applicable means the person does not perform this activity
- Frequently - 2 ½ hours up to 5 ½ hours
- Occasionally – 15 minutes up to 2 ½ hours
- Continuously – 5 ½ hours and beyond

**Frequency of Occurrence**

| Activity | N/A | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| ☑ Standing | ☐ | ☑ | ☐ | ☐ |
| ☑ Walking | ☐ | ☐ | ☑ | ☐ |
| ☑ Sitting | ☐ | ☐ | ☑ | ☐ |
| ☑ Balancing | ☐ | ☐ | ☑ | ☐ |
| ☐ Bending | ☐ | ☑ | ☐ | ☐ |
| ☑ Kneeling | ☐ | ☑ | ☐ | ☐ |
| ☑ Crouching | ☐ | ☑ | ☐ | ☐ |
| ☐ Crawling | ☑ | ☐ | ☐ | ☐ |
| ☑ Reaching | ☐ | ☐ | ☐ | ☑ |
| ☐ Working overhead | ☑ | ☐ | ☐ | ☐ |
| ☑ Keyboard Use/Repetitive Hand Motion | ☐ | ☐ | ☐ | ☑ |
| ☑ Climbing | ☑ | ☐ | ☐ | ☐ |
| ☑ Driving | ☐ | ☑ | ☐ | ☐ |

| Activity | Description | Frequency | Weight |
|---|---|---|---|
| ☐ Pushing | | | ____ lbs. |
| ☐ Pulling | | | ____ lbs. |
| ☐ Lifting | | | ____ lbs. |
| ☐ Carrying | | | ____ lbs. |

Stress level ☐ Low ☐ Moderate ☐ High ☐ Very high – UNKNOWN
Can the job be performed by alternating sitting and standing? ☑ Yes ☐ No
Claimant must use hands for repetitive action such as:

| | Right | | Left | |
|---|---|---|---|---|
| Simple grasping | ☑ Yes | ☐ No | ☑ Yes | ☐ No |
| Firm grasping | ☑ Yes | ☐ No | ☑ Yes | ☐ No |
| Fine manipulation | ☑ Yes | ☐ No | ☑ Yes | ☐ No |

Use feet for repetitive movements as in operating foot controls:
Right ☐ Yes ☐ No  Left ☐ Yes ☐ No  Both ☐ Yes ☑ No

## REQUIRED ATTACHMENTS AND SIGNATURE

Please attach a copy of the claimant's job description.
If salary is based on a W-2, K-1, 1099 or a similar document, attach a copy of the most recent document.
If you have medical information from the claimant's file relating to this disability, please attach copies.
If a work related claim is filed, send a copy of the initial report of injury or illness and award notice.

Fraud Notice
Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statements of claim containing any materially, false information, or conceals for purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and may also be subject to civil penalties, or denial of insurance benefits.
The laws of New York require the following statement appear: Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

| WILLIAM GUARDADO | HR MANAGER | WILLIAM.GUARDADO @ SDAIHC.ORG |
|---|---|---|
| Name (Please print or type) | Title | Email Address |

| | | 7/30/2019 |
|---|---|---|
| Signature | | Date |

(Sec PG 2 - Disability land
Start Date
AUG 3, 2018)



**GUARDIAN®** The Guardian Life Insurance
Company of America

Send to: Group Long Term Disability Claims, P.O. Box 14333, Lexington, KY 40512
For Customer Service: (800) 538-4583    Fax: (610) 807-8221
Documents can be returned electronically at www.GuardianAnytime.com. Click on "Secure Channel" on the Guardian Anytime home page

## SECTION 3 — ATTENDING PHYSICIAN'S STATEMENT

**PATIENT AUTHORIZATION** (This part to be completed by the claimant. The patient is responsible for the cost of completing this form)

Name of Patient: JOSEPH BALFER    Date of Birth: 10/29/5,

Address of Patient: 10523 CAMINITO POLLO    City: SAN DIEGO    State: CA    Zip: 

Employer/Planholder Name: SAN DIEGO AMERICAN INDIAN HEALTH    Group Policy #: 00491

I, the undersigned "patient", AUTHORIZE any physician, medical or mental health professional, medical practitioner, hospital, clinic, healthcare or other medical or medically related facility, healthcare provider, pharmacy, pharmacy benefit manager, therapist, benefit plan administrator, business associate, insurer or reinsurer, consumer reporting agency subject to the Fair Credit Reporting Act, insurance support organization, insurance agent, employer, financial institution, Governmental Agency including The Social Security Administration, The Veteran's Administration or any other organization or person having any knowledge of me or my health to give The Guardian Life Insurance Company of America ("Guardian"), or its employees and agents, or its authorized representatives or third parties, any information in its possession about me. This information includes but is not limited to, medical information as to cause, treatment, diagnoses, prognoses, consultations, examinations, tests or prescriptions with respect to my physical or mental condition or treatment of me. This may include (but is not limited to) HIV infection, any disorder of the immune system, including acquired immune deficiency syndrome (AIDS), mental illness or use of alcohol or drugs. This information also includes non-medical information concerning me, my occupation, employment history, driving history, earnings or finances or information otherwise needed to determine policy claim benefits that may be due me. I agree that a photocopy of this form is as valid as the original, and that this form is valid up to 24 months (12 months in Kansas) from the date shown below.

Signed (Patient): Joe Balfer    Date:

## THIS PART TO BE COMPLETED BY THE ATTENDING PHYSICIAN

**THIS PART TO BE COMPLETED BY THE ATTENDING PHYSICIAN**
Patient's condition is the result of: ☒ Illness  ☐ Injury  ☐ Pregnancy
Is the condition due to a work related illness or injury? ☐ Yes  ☐ No   Precipitated by being fired
If pregnancy, indicate LMP date: ___/___/___    Delivery Date: ___/___/___    ☐ Expected  ☐ Actual
Type of delivery: ☐ Vaginal  ☐ C-Section  ☐ Single Birth  ☐ Multiple Births

**DIAGNOSIS**
Primary diagnosis: DEPRESSION WITH ANXIETY    ICD-10 Code: (F 95.2)
Secondary diagnosis(es): TOURETTES SYND.    ICD-10 Code:
Subjective symptoms: POOR FUNCTIONING, TEARFUL, ANXIOUS BEHAVIORS, DESPONDENCY
Physical examination findings: AS PER SYMPTOMS/SIGNS
Test results (list all results, or enclose test):
Test: ___    Date: ___    Results: ___

Test: ___    Date: ___    Results: ___

**TREATMENT**
Date of onset of this condition: 8/3/18    Date you first treated this patient for this condition: 8/6/18
Date of most recent visit: 8/27/18    Date of next office visit: 1/11/19
Frequency of visits/treatment for this condition: ☐ Weekly  ☐ Monthly  ☒ Other HAS BEEN REFERRED TO PSYCH
Was patient referred to you by another physician? ☐ Yes  ☒ No  If yes, provide name, address, phone # and fax #:

Have you referred this patient to any other physician? ☒ Yes  ☐ No    If yes,  Date(s): 8/6/18  ___/___/___
Physician Name: DR KHANKATCHIAN    Specialty: PSYCHIATRY
Address (Street, City, State, Zip): 11770 Bernardo Plaza Ct. SAN DIEGO CA 92128    Phone #: 858 673-3360
Describe treatment plan (include medication, therapy, counseling, rehab, etc.): PER PSYCHIATRY

Has surgery been performed? ☐ Yes  ☒ No  If yes, Date: ___/___/___    Procedure: ___    CPT Code: ___
Was patient hospitalized for this condition? ☐ Yes  ☒ No  If yes, Date(s) admitted: ___/___/___  Date(s) discharged: ___/___/___

Name of Hospital:

Address:    City:    State:    Zip:

Progress (please check one): ☐ Recovered  ☐ Improved  ☐ Unchanged  ☐ Retrogressed    PER PSYCH
Patient is (please check one): ☐ Ambulatory  ☐ Bed confined  ☐ House confined  ☐ Hospital confined
☐ Nursing Home/Assisting Living confined    ☐ Other

## LEVEL OF FUNCTIONAL IMPAIRMENT

| Did you advise the patient to | a) reduce work hours? | ☐ Yes ☐ No | If yes, as of what date? ___/___/___ |
|---|---|---|---|
| | b) cease work? | ☑ Yes ☐ No | If yes, as of what date? 8/3/16 |
| | c) work light duty? | ☐ Yes ☐ No | If yes, as of what date? ___/___/___ |

**Degree of Physical Impairment:** In an 8-hour work day, your patient can:  *N/A*

Lift/carry (in pounds)  ☐1-10  ☐11-20  ☐ 21-50  ☐ 51-75  ☐ 76+
Push/pull (in pounds)  ☐1-10  ☐11-20  ☐ 21-50  ☐ 51-75  ☐ 76+

Total hours with positional changes
Sit          8  7  6  5  4  3  2  1  (hrs)
Stand        8  7  6  5  4  3  2  1  (hrs)
Walk         8  7  6  5  4  3  2  1  (hrs)
Alternately sit/stand  8  7  6  5  4  3  2  1  (hrs)

Bend/stoop:   ☐ Never   ☐ Occasionally   ☐ Frequently
Reach:        ☐ Never   ☐ Occasionally   ☐ Frequently
Drive:        ☐ Never   ☐ Occasionally   ☐ Frequently
Dominant Hand: ☐ Right  ☐ Left

Other restrictions: _____

Duration of restrictions: _____

### Degree of Psychiatric Impairment  if applicable (check one):

☐ Inadequate information to make assessment
☐ Essentially good functioning in all areas. Occupationally and socially effective.
☐ Slight difficulty in occupational functioning, but generally functioning well. Has some meaningful interpersonal relationships.
☐ Moderate impairment in occupational functioning. Limited in performing some occupational duties.
☐ Major impairment in several areas—work, family relations. Avoidant behavior, neglects family, is unable to work. } *Per Psychiatry*
☐ Inability to function in almost all areas.

Current GAF (Global Assessment of Functioning): ___/90   Highest GAF in past year: ___/90
Do you believe that this patient is competent to endorse checks and direct the use of the proceeds? ☑ Yes  ☐ No

### Degree of Cardiac Functional Impairment (check one):
☐ Class 1 (No limitation); ☐ Class 2 (Slight limitation); ☐ Class 3 (Marked limitation); ☐ Class 4 (Complete limitation)
Please supply patient's height: _____ weight _____ blood pressure _____/_____; EF _____% date _____

### Return to Work Expectation
In your opinion, does the patient have some capacity for work: ☐ Yes ☐ No  *PER PSYCHIATRY*
If yes, as of what date: ___/___/___  ☐ Full-time ___/___/___  ☐ Part-time
If no, when do you anticipate the patient will have capacity for work? ___/___/___  ☐ Full-time  ☐ Part-time  ☐ Never

**PLEASE ATTACH PERTINENT MEDICAL RECORDS INCLUDING, BUT NOT LIMITED TO, PROGRESS NOTES, DIAGNOSTIC TEST RESULTS, DISCHARGE SUMMARIES, OPERATIVE REPORTS, CONSULTATION REPORTS AND MENTAL STATUS EXAM (IF APPLICABLE). THIS WILL HELP TO EXPEDITE THE CLAIM PROCESSING AND REDUCE ADDITIONAL REQUESTS AND FOLLOW UP.**

| Physician's Name | Degree | Specialty |
|---|---|---|
| David N. **Spees, M.D.** Sharp Rees-Stealy | | *FAM MED* |
| Address 16899 West **Bernardo Drive** San Diego, CA 92127 | City | State  Zip |
| Telephone # P(858)499-2705 F(858)521-2111 | Fax # | Tax ID # |

Remarks: *DISABILITY FROM 8/18/17 ONWARD PER PSYCHIATRY*

### FRAUD NOTICE

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statements or claim containing any materially, false information, or conceals for purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and may also be subject to civil penalties, or denial of insurance benefits.

**The laws of New York require the following statement appear:**  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars, and the stated value of the claim for each such violation.

X _____     Date 12/5/18
Signature of Physician (no stamp)

# EXHIBIT F

**S Guardian®**

NORTHEAST REGIONAL OFFICE
**Professional Resources Team**
PO Box 14333
Lexington, KY 40512
Toll Free: 1-800-538-4583

| To: | From: Guardian Life Insurance Company of Ameri |
|---|---|
| Company: | Date: 12/13/19 03:23:12 PM |
| Fax Number: 7145496201 | Pages (Including cover): 14 |
| Re: Claim # 101146 | |

**Notes:**

ATTN: JON MOWER, ESQ.

RE: JOSEPH E. BULFER, DOB: 10/29/1951, LTD CLAIM# 101146.

PLEASE SEE THE ATTACHED DECISION LETTER, ALSO MAILED.

Kind Regards,

Eden Guri, DIA, DHP, DIF
Appeals Case Manager II
O: 610 807 2644| F: 610 807 2844
eden_guri@glic.com| guardianlife.com

 **S Guardian**

Accessing your Guardian benefit information is right at your fingertips through Guardian Anytime, our new secure website.   To register, just go to www.GuardianAnytime.com.

**Confidentiality Note:** This fax and any attachments are confidential and may be protected by legal privilege.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this fax or any attachment is prohibited.  If you receive this fax in error, please notify us immediately by returning it to sender and delete this copy from your system.

# 8 Guardian

December 13, 2019

<u>VIA FAX & U.S. MAIL</u>

Theodora Oringher, P.C.                                    Group Claims Professional Resources Team
Adam Wentland, Esq.                                        P.O. Box 14333
555 Anton Boulevard, Ninth Floor                          Lexington, KY 40512
Costa Mesa, CA 92626-7109

**Important information regarding the below referenced claim.**

| Claim Number: 101146 |
|---|

| Insured Name:  Joseph Bulfer |
|---|
| Group Plan #:    439935 |

Dear Mr. Wentland,

We are writing you regarding Joseph Bulfer's claim for Long-Term Disability (LTD) benefits under Group Plan# 439935, issued to San Diego American Indian Health Center. We have completed our review of your request for reconsideration of Guardian's decision to decline benefits on Mr. Bulfer's claim.   After thoroughly reviewing all of the information on file, we are concluding that no benefits are payable.

<u>**Please refer to the following plan provisions and summary of our decision:**</u>

## ELIGIBILITY FOR LONG TERM DISABILITY INCOME COVERAGE

### When Coverage Ends

- Your coverage will end on the first of the following dates:

- The date Your Active Full-Time Work ends for any reason, except as shown below under Continuation Of Coverage.

- The date You stop being an eligible Employee under this Certificate.

- The date You are no longer working in the United States and/or Canada, or no longer working outside of the United States for a United States based Employer in a country or region approved by Us. Any incidental business or personal travel outside of the United States and/or Canada, or outside of a country or region approved by Us, is covered. Such travel will be considered incidental if it is for a period not to exceed 30 consecutive days.

- The date the group Certificate ends, or is discontinued for a class of Employees to which You belong.

- The last day of the period for which required payments are made for You.
- The date You die.

Case 3:20-cv-00877-LAB-MSB    Document 1    Filed 05/11/20    PageID.94    Page 94 of
12/13/19  15:34:49  Guardian Life Insura ->    104    Guardian Life Insura Page 004

Page **2** of **12**

You may have the right to continue certain group benefits for a limited time after Your coverage would otherwise end. Read this Certificate carefully for details and discuss with your Employer or administrator. Any provisions that
allow continuation of such group benefits must be offered and administered on a fair and equitable basis.

## CONTINUATION OF COVERAGE

### Coverage During Disability

You may be Disabled when Your Active Full-Time Work ends In that case, Your coverage will remain in force during the:

- Elimination Period, subject to payment of required premiums; and

- The period of time for which benefits are payable by this Certificate.

But, in order for Your coverage to continue, the Disability:

- Must be covered by this Certificate;

- And benefits must not be excluded due to this Certificate's Pre-Existing Conditions provision, or any other exclusion.

If You're Disabled when Your Active Full-Time Work ends due to a job related Injury or Sickness for which benefits are not payable Your coverage will remain in force until the earlier of the date:

- You are terminated from employment with the Employer; or

- You have been Disabled for 6 Months.

## LONG TERM DISABILITY INCOME COVERAGE

### Benefit Provisions

**How Payments Start:** To start getting payments from this Certificate, You must meet all of the conditions listed below and elsewhere in this Certificate.

- You must:

  - Become Disabled while covered by this Plan; and

  - Remain Disabled and covered for this Plan's Elimination Period.

- You must provide Proof of Loss, as described in Claim Provisions.

Benefits accrue as of the first day after the end of the Elimination Period, subject to all Certificate terms.

You can satisfy the Elimination Period while working, provided You are Disabled.

Case 3:20-cv-00877-LAB-MSB   Document 1   Filed 05/11/20   PageID.95   Page 95 of
12/13/19  15:35:05  Guardian Life Insura ->      104      Guardian Life Insura Page 005

Page 3 of 12

## Limitations And Exclusions

**Exclusions:** This Certificate does not pay benefits for Disability caused by:

- Declared or undeclared war, act of war, or armed aggression;

- Service in the armed forces, National Guard, or military reserves of any state or country;

- Your taking part in a riot or civil disorder;

- Your commission of, or attempt to commit a felony. A felony means either:

- A crime as defined as such under the laws in the jurisdiction in which the crime was committed or attempted; or

- In states where the law does not define crimes in terms of felonies and misdemeanors, felony means any crime punishable for a minimum of one year term of incarceration in a jail or prison, as determined by the law of the jurisdiction where the crime was committed or attempted; or

- A crime as defined as such under federal law;

- The intentional or voluntary inhalation or ingestion of gas, chemical, solvent, poison or other substances not intended for internal consumption, irrespective of any pre-existing or co-morbid condition;

- Intentional self-inflicted injuries;

This Certificate does not pay any benefits for any period of Disability:

- During which You are confined to a jail, prison or other facility as a result of Your conviction of a crime;

- Which starts before You are covered by this Certificate;

- During which Your loss of earnings is not solely due to Your Disability.

This Certificate does not pay benefits due solely to a risk of relapse or exacerbation of a prior injury or illness in the absence of a current impairment and Disability.

## DEFINITIONS

**Active Work** or **Actively At Work** or **Actively Working:** These terms mean You are able to perform, and are performing, all of the regular duties of Your work for the Employer, on a Full-Time basis at:

One of the Employer's usual places of business;

Some place where the Employer's business requires You to travel; or

Any other place You and the Employer have agreed on for Your work.

**Disability or Disabled:** These terms, when used alone, mean (a) Total Disability or Totally Disabled; or (b) Partial or Residual Disability.

**Total Disability or Totally Disabled** means that as a result of Sickness or Injury, during the Elimination Period and the Own Occupation period, You are not able to perform with reasonable continuity the substantial and material

Case 3:20-cv-00877-LAB-MSB   Document 1   Filed 05/11/20   PageID.96   Page 96 of
104
12/13/19  15:35:25  Guardian Life Insura ->          Guardian Life Insura Page 006

Page 4 of 12

acts necessary to pursue Your Usual Occupation and You are not working in Your Usual Occupation. After the end of the Own Occupation period, Total Disability or Totally Disabled means that as a result of Sickness or Injury You
are not able to engage with reasonable continuity in any occupation in which You could reasonably be expected to perform satisfactorily in light of Your age, education, training, experience, station in life, and physical and mental capacity.

Substantial and material acts means the important tasks, functions and operations generally required by Employers from those engaged in Your Usual Occupation that cannot be reasonably omitted or modified.

In determining what substantial and material acts are necessary to pursue Your Usual Occupation, We will first look at the specific duties required by the Employer or job. If You are unable to perform one or more of these duties with reasonable continuity, We will then determine whether those duties are customarily required of other persons engaged in Your Usual Occupation. If any specific, material duties required of You by the Employer or job differ from the material duties customarily required of other persons engaged in Your Usual Occupation, then We will not consider those duties in determining what substantial and material acts are necessary to pursue Your Usual Occupation.

Usual Occupation may be interpreted to mean the employment, business, trade or profession that involves the substantial and material acts of the occupation You were regularly performing for the Employer when the disability began. Usual Occupation is not necessarily limited to the specific job You performed for the Employer.

**Partial or Residual Disability** means You are not Totally Disabled and that while actually working in an occupation, as a result of Sickness or Injury, You are unable to engage with reasonable continuity in that or any other occupation in which You could reasonably be expected to perform satisfactorily in light of Your age, education, training, experience, station in life, and physical and mental capacity.

**Full-Time:** This term means:

You are not a Part-time Employee as defined by Your Employer and the average number of hours You worked for the six Months prior to the last full day worked was at least 30 hours per week at:

- Your Employer's place of business;

- Some place where the Employer's business requires You to travel; or

- Any other place You and Your Employer have agreed upon for the performance of occupational duties.

**Mental Illness:** This term means any mental disorder, regardless of cause, listed in the Diagnostic and Statistical Manual of Mental Disorders (DSM) currently in use by the American Psychiatric Association (APA). If the APA stops publishing the DSM, We will use another similar source. A Mental Illness may be caused or contributed to, by or result in, physical, biological or chemical factors or symptoms.

For purposes of this Certificate, Mental Illness does not include:

- Irreversible dementia caused by Alzheimer's disease, stroke, trauma or viral infection; or

- Any other condition not typically treated by a psychiatrist, clinical psychologist or other qualified mental health professional.

**Objective Medical Evidence:** This term includes:
- Diagnostic testing;

- Laboratory reports; and

- Medical records of a Doctors exam documenting clinical signs, presence of symptoms and test results relevant to your Disability and claimed restrictions and limitations and consistent with Generally Accepted Medical Standards.

Generally Accepted Medical Standards are those supported by nationally recognized authorities in the health care field unless a state medical standard exists, in which case the state medical standard shall apply. Generally Accepted Medical Standards are those supported by nationally recognized authorities in the health care field including:

- The American Medical Association (AMA);

- The AMA Board of Medical Specialties;

- The Food and Drug Administration;

- The Centers for Disease Control;

- The National Cancer Institute;

- The National Institutes of Health;

- The Department of Health and Human Services; and

Any state agency, board, or regulatory body charged with determining acceptable medical standards in the state in which You reside.

**Objective Proof of Your Restrictions and Limitations:** During the Own Occupation period this term means objective proof of Your inability to perform the duties of Your Own Occupation, and including all restrictions and limitations relating to Your inability to work. After the Own Occupation period, this term means objective proof of Your inability to perform the duties of any Gainful Work and including all restrictions and limitations relating to Your inability to work.

**Own Occupation or Usual Occupation:** This term means:

- The occupation(s) You are routinely performing for Your Employer immediately prior to the first date of Disability, and is further defined as follows. Own Occupation:

  - Includes any employment, trade, or profession that is substantially similar in terms of tasks, functions, skills, abilities, knowledge, training and experience, required by Employers from those engaged in a particular occupation in the general labor market in the national economy; and

  - Is not defined with reference to a specific Employer or specific location or particular work environment; and

  - Only includes the occupation or occupations for which You are covered under this Certificate, and

  - Generates the Insured Earnings covered by this Certificate.

<u>**Summary of Decision:**</u>

On August 2, 2019 the Long-Term Disability (LTD) claims department received an application for benefits from Mr. Bulfer. Mr. Bulfer indicated the first date he was unable to work his regular work schedule, due to his condition, was

Case 3:20-cv-00877-LAB-MSB    Document 1    Filed 05/11/20    PageID.98    Page 98 of
12/13/19  15:36:13  Guardian Life Insura ->        104              Guardian Life Insura Page 008

Page 6 of 12

August 3, 2018 and that he worked six (6) hours on that day. Mr. Bulfer indicated he was unable to perform "all" job duties due to " severe psychological and mental incapacitation due to inappropriate termination of employment, with no recourse." Mr. Bulfer further indicated a return to work date was "unknown" and he was under "psych care". Mr. Bulfer noted his disabling condition(s) and symptoms as severe psychological/metal incapacitation, bipolar disorder, anxiety and depression and that the symptoms first began immediately, upon discharge. Per Mr. Bulfer, he had not had these conditions before, and he was first treated for these conditions on August 16, 2018. Included with Mr. Bulfer's application was a list of treating providers and dates of treatment indicating that he treated with following providers:

- Dr. David N. Spees (Primary Care Provider), of Sharp Rees-Stealy Medical Group, for the period of August 3, 2018 through August 16, 2018
- Dr. Karine H. Khatchatrian (Board Certified in Psychology & Neurology) for the period of August 18, 2018 through November 9, 2018
- Dr. Mary Cueva (Family Medicine) from November 12, 2018 through present
- Dr. Marcela V. Kuusinen (Clinical Psychology) for the period of December 12, 2018 through present
- Dr. Ali Salami (Cardiology) for the period of March 29, 2019 through present

Also included with Mr. Bulfer's application for benefits was a copy of an explanation of benefits (EOB) from the Employment Development Department of the State of California confirming the receipt of California State Disability benefits effective as of August 4, 2018 and a copy of Mr. Bulfer's resume.

The employer section of the application was completed by William Guardado, Human Resources Manager at San Diego American Indian Health Center, who confirmed that Mr. Bulfer last worked for six (6) hours on August 3, 3018 as a Chief Executive Officer (CEO) and was terminated on the same day. Also included was a copy of Mr. Bulfer's narrative job description and 2018 W-2 wage and tax statement.

An Attending Physician's Statement (APS) of Disability, signed by Dr. Spees on December 5, 2018, certified that Mr. Bulfer's condition was the result of an illness which was "precipitated by being fired" and that Mr. Bulfer's disabling diagnoses were depression with anxiety and Tourette's syndrome with subjective complaints of poor functioning, tearfulness, anxious behaviors and despondency. Dr. Spees indicated that the condition(s) began on August 3, 2018 and that he first treated Mr. Bulfer for the disabling conditions on August 16, 2018. Dr. Spees further indicated that he had referred Mr. Bulfer, on August 16, 2018, to a Psychiatrist. Dr. Spees certified that he advised Mr. Bulfer to cease working on August 3, 2018 and return to work expectations would be "per psychiatry" and further remarked: "Disability from 8/16/18 onward per Psychiatry."

A second APS of disability, signed by Dr. Cueva on July 18, 2019, noted that Mr. Bulfer's condition was an illness that was "in part" due to a work-related illness or injury. Dr. Cueva certified that Mr. Bulfer's disabling diagnoses to be bipolar disorder and chest pain with subjective symptoms of poor energy, anxiety, depressed mood, shortness of breath (SOB) and chest pain. Dr. Cueva certified that the onset of the conditions was August 3, 2018 and that she first treated Mr. Bulfer on November 12, 2018. Per Dr. Cueva, she recommended that Mr. Bulfer cease working on November 12, 2018 and also noted that Mr. Bulfer could not return to work.

Included with Mr. Bulfer's application for benefits were several copies of Physician/Practitioner's Supplementary Certificates for California State Disability Benefits, completed by Dr. Cueva .

Upon review of the information contained in Mr. Bulfer's claim file and confirmed by his providers and Mr. Guardado, the LTD claims department determined that Mr. Bulfer last worked on August 3, 2018 and his disability began on August 4, 2018. However, as Mr. Bulfer was terminated on August 3, 2018, his coverage under Group Plan# 439935 ended on August 3, 2018 as well. Therefore, Mr. Bulfer was notified, by letter, on August 30, 2019, that benefits on the above-mentioned claim were not payable as Mr. Bulfer no longer had coverage when his disability began on August 4, 2018.

On September 16, 2019, Guardian received a request for Appeal review, from Jon Mower, Esq., of your office, of the decision dated August 30, 2019 along with a request for a copy the entire file pertaining to Mr. Bulfer's claim for LTD

Case 3:20-cv-00877-LAB-MSB   Document 1   Filed 05/11/20   PageID.99   Page 99 of
12/13/19 15:36:49 Guardian Life Insura ->      104          Guardian Life Insura Page 009

Page 7 of 12

benefits under Group Plan# 439935, issued to San Diego American Indian Health Center. Additionally, the Appel request noted that Mr. Bulfer's claim for benefits was payable because Dr. Spees certified that he became disabled on August 3, 2018, prior to his coverage ending on August 4, 2018. It was also noted that Mr. Bulfer actually only worked four (4) hours on August 3, 2018, and that, this matter would not have changed the fact that his disability began on August 3, 2018.   Finally it was noted that Mr. Bulfer's claim was payable because he was not effectively terminated until August 7, 2018, after his disability began, as payroll records included demonstrated. The Appeal request indicated that as there was sufficient evidence on file to make a decision, and an Appeal decision was expected within ten (10) days. Enclosed with the Appeal request was a copy of the August 3, 2018 termination letter sent to Mr. Bulfer from Paula Brim, Chair, Board of Directions, San Diego American Indian Health Center, which confirmed that Mr. Bulfer's at-will employment was terminated, effective August 7, 2018, however, Mr. Bulfer was "immediately relieved of all duties" and was no longer "to perform any services for SDAIHC, to bind SDAIHC to any contracts, or to represent yourself as affiliated with SDAIHC in any way." Duplicate copies of the employee and employer sections of the application for benefits and the APS signed by Dr. Spees on December 5, 2018 were also included. No payroll records were received, however, Mr. Bulfer's paystub for the period of August 1, 2018 through August 7, 2018 was on file.

We acknowledged your request for reconsideration review on September 19, 2019 and mailed a copy of Mr. Bulfer's complete claim file via UPS. During our telephone conversation on September 19, 2019, we advised that the following additional information was necessary for our Appeal review:

- Attendance records from Mr. Bulfer's employer for the period of July 4, 2018 through August 3, 2018
- Medical records from any/all of Mr. Bulfer's treating providers for the period of August 1, 2018 through present, including, but not limited to:
  - Dr. Spees
  - Dr. Khatchatrian with a completed Psychiatric Assessment from
  - Dr. Cueva
  - Dr. Kuusinen

Per our September 19, 2019 conversation, you were in possession of the medical records and would be sending them to our office, but confirmed that we should request the attendance information directly from Mr. Bulfer's employer.

We sent an e-mail to Mr. Guardado on September 25, 2019 requesting a copy of Mr. Bulfer's attendance records for the period of July 4, 2019 through his last day worked (in error, as the correct period of time was July 4, 2018 through the last day worked). We also requested that Mr. Guardado confirm if Mr. Bulfer had expressed having any difficulty, prior to his last day worked, performing the major duties of his own occupation, or if he had missed any time from work. We received a response from Mr. Guardado on the same day advising that Mr. Bulfer did not have any attendance records from July 4, 2019 and beyond as he was a former employee who's last physical day worked was August 3, 2018, but was paid through August 7, 2018. We responded to Mr. Guardado, correcting our request, for attendance records for the period of July 4, 2018 through August 3, 2018.

On September 25, 2019, we received medical and clinical records, diagnostic exam findings, lab results and physical therapy notes from your office, for Mr. Bulfer, for the period of August 6, 2018 through April 12, 2019.

To provide a full and fair Appeal review, Mr. Bulfer's claim was referred to our in-house Nurse Case Manager, Melissa Rentzheimer, BSN, RN and Vocational Rehabilitation Specialist, John Runzo, CDMS, CCM, CEAS, CEAS II, ADAA.

The records received confirm that Mr. Bulfer first treated with a provider, following his last physical day of work of August 3, 2018, on August 6, 2018. The August 6, 2018 office visit note from Dr. Cheryl D Wright (Rheumatology) indicates that Mr. Bulfer was being seen for a follow-up visit for a complaint of right knee pain. According to the office visit note, the pain began on July 27, 2018, had continued and was "moderate to severe." Dr. Wright noted that Mr. Bulfer "[is] requesting an injection as well as disability from his job because of the pain." On physical exam, Dr. Wright noted a "gait with noticeable limp on the right side with a slight flexed gait at right knee" and " slight decrease range of motion right knee with minimal effusion." Dr. Wright gave Mr. Bulfer an injection of Kenalog, recommended

Case 3:20-cv-00877-LAB-MSB   Document 1   Filed 05/11/20   PageID.100   Page 100
12/13/19  15:37:24  Guardian Life Insura ->   of 104        Guardian Life Insura Page 010

Page 8 of 12

that Mr. Bulfer call the office in two (2) weeks and ordered a magnetic resonance imaging (MRI) scan. Dr. Wright also noted that she excused Mr. Bulfer from work for "today and tomorrow" and that he should follow-up in six (6) weeks. However, the office visit note also confirms that Dr. Wright advised Mr. Bulfer that she "informed the patient that I am not able to put him out on temporary disability at this time."

Mr. Bulfer was subsequently treated by Dr. Brendan J. Morris (Family Medicine), of Sharp Rees-Stealy Medical Group, on August 8, 2019 complaining of "persistent depression and stress." However, the note indicated that this was an "acute" onset, due to the unexpected loss of his job. Mr. Bulfer advised that he was notified at the end of the day on the previous Friday and advised that the termination was "political." Mr. Bulfer noted having difficulty dealing with the termination as it was sudden, and was experiencing issues with sleep and crying spells, but was not experiencing any suicidal ideations or self-harm. Mr. Bulfer did advise that he had a history of depression about ten (10) years prior, but declined medication at the date of the office visit. In addition, Mr. Bulfer stated that he was "unclear if he wants to follow disability or place a lawsuit against his previous job." The physical exam indicated a "normal" mood and affect, and that Mr. Bulfer had "acute grief reaction" after recently losing his job several days ago unexpectedly." Dr. Morris indicated that Mr. Bulfer did not want medical treatment at present and recommended that Mr. Bulfer seek counseling for the reaction to the loss of his job, but Mr. Bulfer again indicated that he "was unclear if he will ask for disability", but noted that he was experiencing right knee pain that he was seen for. Mr. Bulfer's Patient Health Questionnaire (PHQ-9) score at this visit was eight (8), indicating mild depression.

On August 16, 2018, Mr. Bulfer saw Dr. Spees for a follow-up appointment regarding the acute onset of anxiety, depression and inability to eat or sleep due to the unexpected termination. Dr. Spees noted that since Mr. Bulfer was terminated on August 3, 2018, he had experienced issues with sleeping, eating and had a flare-up of Tourette's Syndrome. Per Dr. Spees note, Mr. Bulfer advised he had an upcoming appointment with a Psychiatrist and was "considering" disability. Mr. Bulfer was currently not taking any psycho-active medications, but had taken clonidine and Cymbalta in the past. Dr. Spees prescribed clonidine, at a low dose and increasing, and regarding the diagnosis of depression noted that "although he is not having significant pain at this time, will restart duloxetine 20mg at bedtime, to help him sleep and get started on an antidepressant." Dr. Spees recommended that Mr. Bulfer follow-up with a Psychiatrist and return to the office in two (2) to three (3) weeks. Dr. Spees also recorded that "If he needs disability, it would need to come from his mental health provider."

Additional records included office visit notes, diagnostic exam findings, lab results and physical therapy records for the period of August 24, 2018 through April 12, 2019. However, we wanted to determine if there were any additional available records for review prior to August 1, 2018. Therefore, on September 27, 2019, we sent a request to your office for a copy of any/all available medical records for the period of July 1, 2018 through August 1, 2018. We received an e-mail from you on September 27, 2019 advising that your office had previously sent all available records for Mr. Bulfer from the providers with which he treated for the disability which began on August 3, 2018 as certified by Dr. Spees.

In an effort to ensure that we were in possession of all available records from Dr. Spees, and in order to clarify Mr. Bulfer's functional limitations and, or restrictions as of the day he last physically worked, we determined that additional information was needed from Dr. Spees. On October 3, 2019, Ms. Rentzheimer sent a request to Dr. Spees for a copy of any available records for the period of July 1, 2018 through August 1, 2018 and a request for a response to specific questions regarding the dates he treated Mr. Bulfer and associated functional restrictions and, or limitations.

As of October 9, 2019, we had not yet received a response from Mr. Guardado, nor had we received a copy of attendance records for Mr. Bulfer for the period of July 4, 2018 through August 3, 3018, therefore, we e-mailed a follow-up request. We sent an additional follow-up e-mail request to Mr. Guardado on October 15, 2019.

On October 21, 2019, we notified you, in writing, that our first 45-day review period was due to expire on October 30, 2019, and as we had not yet received attendance records from Mr. Bulfer's employer for the period of July 4, 2018 through August 3, 2018, we required an additional 45 days for review, as we were in need of this information to continue our review. We also requested that you assist us in obtaining the attendance records as we had requested this information from Mr. Bulfer's employer several times without a response.

Case 3:20-cv-00877-LAB-MSB    Document 1    Filed 05/11/20    PageID.101    Page 101
12/13/19  15:38:04  Guardian Life Insura ->    of 104                Guardian Life Insura  Page 011

Page 9 of 12

We received a response from you on October 23, 2019, including a copy of your original Appeal request and all enclosed documents, advising that our extension letter dated October 21, 2019 was "not in good faith and violates ERISA." Your basis for this statement was that Mr. Bulfer and his employer had confirmed that his last day worked was August 3, 2018 and "records" were previously provided by the employer and attached with your Appeal letter dated September 10, 2019. You again advised that August 3, 2018 was the day that Mr. Bulfer's disability began, as certified by Dr. Spees and supported by the "voluminous" medical records provided by your office. Finally, you requested all copies of requests that had ever been sent to Mr. Bulfer's employee for attendance records.

Please note that the information provided by Mr. Bulfer's employer prior to the date the above-mentioned claim was denied, and also provided by your office, is not a copy of attendance records. The information provided is a copy of a pay stub for the period of August 1, 2018 through August 7, 2018. We requested attendance records for the period of July 4, 2018 through Mr. Bulfer's last day worked, with a daily breakdown of hours worked, because this is the specific information that was needed to determine if Mr. Bulfer had missed any time from work or used any sick, vacation and, or personal time off (PTO) leading up to the last day he worked. To date, we have not received the specific information that was requested either from Mr. Bulfer's employer, or your office.

As of October 24, 2019, we had not yet received a response from Dr. Spees regarding Ms. Rentzheimer's request, therefore, a second request was sent to his office. Ms. Rentzheimer also forwarded the request to your office and requested your assistance in obtaining the information.

Dr. Spees' response was received on October 24, 2019. Dr. Spees stated that Mr. Bulfer had received medical care/treatment for the complaints of anxiety and, or depression prior to his August 8, 2018 visit with the doctor. When asked to provide the date prior to August 8, 2018 that Dr. Spees treated Mr. Bulfer for the conditions, Dr. Spees stated "you may request records." Ms. Rentzheimer asked if Mr. Bulfer had any functional limitations and, or restrictions that would have caused him to be unable to work prior to August 8, 2019 (this was a typo-graphical error, as the date should have read August 8, 2018), and Dr. Spees responded: "unknown, if so, you would need information from his mental health provider."

Upon realization that there was a typo-graphical error in the date in question, as indicated above, in the first request sent to Dr. Spees, Ms. Rentzheimer sent a corrected request to Dr. Spees on November 6, 2019 and requested that he confirm if the corrected date would impact or change his October 24, 2019 response(s).

On November 6, 2019, we received an updated California State Disability Physician/Practitioner's Supplementary Certificate signed by Dr. Cueva, extending Mr. Bulfer's disability through February 1, 2020.

A response was received from Steven C. Admunson, representing San Diego American Indian Health Center, on November 7, 2019 regarding Mr. Bulfer's attendance and our corresponding questions. Per Mr. Admunson, in a casual conversation, Mr. Bulfer had mentioned that he injured his knee-outside of work. Additionally, Mr. Admunson advised that as Mr. Bulfer was an exempt employee, attendance records were not kept for him, but that he did not express having any difficulty performing the duties of his occupation prior to this last day worked and did not miss any time from work.

We received an additional response to our original request to Dr. Spees, on November 11, 2019 in which Dr. Spees again noted that Mr. Bulfer did receive medical care/treatment for the complaints of anxiety and, or depression prior to his August 8, 2018 visit with the doctor. However, this time Dr. Spees indicated that he first treated Mr. Bulfer for the conditions in 2009, and any functional limitations and, or restrictions that would have caused Mr. Bulfer to be unable to work prior to August 8, 2019 were "unknown to me." Also attached was a confirmation from Dr. Spees' office that there were no available records for the period of July 1, 2018 through August 1, 2018.
Also received on November 11, 2019 was Dr. Spees response to the request sent on November 6, 2019, with the corrected date of August 8, 2018. When asked if the corrected date would impact or change his October 24, 2019 response(s), Dr. Spees stated that he assessed Mr. Bulfer and indicated in his "report" that the onset of the condition was on August 3, 2018 and Mr. Bulfer was referred to a Psychiatrist, Dr. Khatchatrian. Dr. Spees further advised that he noted this information in his December 5, 2018 "report" and to "please correct your date."

Case 3:20-cv-00877-LAB-MSB    Document 1    Filed 05/11/20    PageID.102    Page 102
12/13/19  15:38:42  Guardian Life Insura →    of 104    Guardian Life Insura Page 012

Page 10 of 12

We received a letter from Mr. Bulfer on November 19, 2019, addressed to Ms. Rentzheimer, in which he advised that Dr. Spees has already answered her questions and the delay of approving his claim has put him in "extreme economic hardship." Mr. Bulfer further advised that Dr. Spees stated that his condition began on August 3, 2018 and he was then referred to Dr. Khatchatrian. Mr. Bulfer then pointed out the errors in the requests sent to Dr. Spees and requested that Ms. Rentzheimer expedite the approval of his claim.

On November 20, 2019, we received another letter from Mr. Bulfer, again addressed to Ms. Rentzheimer, with a "re-cap" of his disability dates, submitted by his providers and request to expedite the review and approval of his claim.

Please note that, although Ms. Rentzheimer did send multiple requests to Dr. Spees, it was in an effort to correct a typo-graphical error. Further, Ms. Rentzheimer's role in the Appeal review is to review the medical and, or clinical information and follow-up for any needed clarification from providers. However, it is the Appeals Case Manager who determines if an individual is eligible for coverage and, or benefits in accordance with the terms of the Group Plan.

Pursuant to the Department of Labor's final rule amending its claim and appeal procedures (29 C.F.R. § 2560.503) for ERISA covered plans, we must provide you with any new or additional evidence or rationale considered, relied upon or generated during the appeal adjudication, prior to making a final determination. Therefore, on November 21, 2019, a copy of all new information received upon our Appeal review, including all requests sent to Mr. Bulfer's employer for attendance records, was delivered to your office via UPS and signed for by Fernando. We advised that if you wished to respond to this information to please do so within 10 business days of receipt.

On December 2, 2019, we sent you an e-mail reminder that the 10 business days to respond to the information delivered would expire on December 9, 2019.

To date, we have not received a response from your office and the 10 days to respond to the information has expired, therefore, we must render a decision based on the information on file.

"Total Disability or Totally Disabled" as noted in the above policy provision is defined as the inability to perform, with reasonable continuity, the substantial and material acts necessary to pursue a covered person's usual occupation, providing that the covered person is not working in his or her usual occupation, during the elimination and own occupation period, as a result of a current sickness or injury.

To determine if a covered person meets the definition of "Total Disability or Totally Disabled", as defined by Group Plan# 439935, as listed above, there must be "Objective Medical Evidence" and "Objective Proof of Your Restrictions and Limitations" as described in the above policy provisions for the date of claimed disability going forward.

In review of the medical records submitted and the response(s) received from Dr. Spees, it is clear that Mr. Bulfer did not treat with any provider on, or at any time reasonably prior to, August 3, 2018. In fact, Mr. Bulfer first treated with a provider on August 6, 2018 at which time, he was seen by Dr. Wright for a follow-up of complaints of right knee pain. Additionally, Dr. Wright states in her office visit note that Mr. Bulfer is requesting disability from his job, however, she advises she can give him an out of work note for August 6, 2018 and August 7, 2018, but she "...is not able to put him out on temporary disability at this time."

Mr. Bulfer does not see another provider until August 8, 2018, at which time he is seen by Dr. Morris for an acute onset of "grief reaction" following the unexpected loss of his job. Mr. Bulfer's mood and affect were normal on exam and he declined medication. He stated that he was unsure if he wanted to "follow disability or place a lawsuit against his previous job." Dr. Morris recommended that Mr. Bulfer follow-up with a counselor and again, Mr. Bulfer indicated that he was not sure if he would "ask for disability."

On August 16, 2018, Mr. Bulfer saw Dr. Spees for a follow-up appointment to address anxiety and depression. Mr. Bulfer noted to have an upcoming appointment with a Psychiatrist and Dr. Spees stated that "If he needs disability, it would need to come from his mental health provider."

Case 3:20-cv-00877-LAB-MSB   Document 1   Filed 05/11/20   PageID.103   Page 103
12/13/19  15:39:16  Guardian Life Insura ->      of 104           Guardian Life Insura  Page 013

Page 11 of 12

Additionally, as noted above, in the policy provisions, "When Coverage Ends" and "Continuation of "Coverage", a covered person's coverage ends on the first of the dates listed, the first of which is the date his or her active full-time work ends. However, if he or she is disabled, as defined by this plan, on that date, coverage may continue.

Subsequently, although Dr. Spees indicated on the Attending Physician's Statement of Disability, signed on December 5, 2018, that Mr. Bulfer's disabling condition began on August 3, 2018 and that he advised Mr. Bulfer to cease working on August 3, 2018, neither Dr. Spees, nor any other provider, treated Mr. Bulfer on August 3, 2019. Because no medical provider treated Mr. Bulfer on August 3, 2018, there is no available objective medial evidence as of that date. Further, there is no provider who is able to supply limitations and, or restrictions as of August 3, 2018 that would have precluded Mr. Bulfer from performing, with reasonable continuity, the substantial and material acts necessary to pursue his usual occupation. In fact, the records on file demonstrate that Mr. Bulfer was first treated, following August 3, 2018, the date his active full-time work ended, on August 6, 2018 and he was not treated for the condition for which he is claiming disability. Consequently, Mr. Bulfer does not meet the definition of Total Disability or Totally Disabled as defined by Group Plan# 439935 on August 3, 2018 and therefore, as this was the date that his last active full-time work ended, his coverage also ended on August 3, 2018.

Further, as noted in the above policy provision, "Exclusions", and in accordance with the terms of Group Plan# 439935, benefits are not payable for any period during which a covered person's loss of earnings is not solely due to his or her disability. As Mr. Bulfer was not disabled, as defined by the terms of this plan, on August 3, 2018, his loss of income was due to termination and therefore, not solely due to a disability. Accordingly, this is not a covered period of loss under the terms of Group Plan# 439935.

In your request for reconsideration review, you argued the date that Mr. Bulfer's disability began, stating that he last worked on August 3, 2018 and his disability also began on the same day, as certified by Dr. Spees. You also argued that although Mr. Bulfer last worked on August 3, 2018, his termination date was not until August 7, 2018, as confirmed by the termination letter from his employer and a copy of his last pay stub. Based on his termination date of August 7, 2018, you argued that Mr. Bulfer would have coverage beyond the date his disability began. Please be advised that because Mr. Bulfer did not treat with any provider on August 3, 2018, there is no objective medical evidence and, or objective proof of his restrictions or limitations on that date. Therefore, he does not meet the definition of disability on August 3, 2018 and his coverage ended on August 3, 2018, regardless of the termination date and therefore, any medical records beyond this date are not relevant to this review.

If in compliance with the Employee Retirement Income Security Act (ERISA) of 1974, as amended, you are hereby notified of the following:

No internal rules or guidelines have been relied upon in making this determination. You are entitled to receive, upon request, and without charge, reasonable access to copies of documents, records or other information relevant to this determination. You have the right to bring civil suit under federal law. You or your Plan may have other alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency.

Please refer to the following provision in the plan of insurance:

**Legal Actions:** No action at law or in equity shall be brought to recover on this Certificate prior to the expiration of 60 days after written Proof of Loss has been furnished in accordance with the requirements of this Certificate. No such action shall be brought after the expiration of three years after time written proof of loss is required to be furnished.

Please be advised that the legal actions that apply to the above-mentioned claim will expire on December 13, 2022.

This is Guardian's final position on this matter. Please note that we are not waiving our defenses under the terms of the plan or as provided by law.

Sincerely,

*Eden Guri,* DIA, DHP, DIF

**Appeals Case Manager**
**Professional Resources Team**
**Office: 610 807 2644**
**Fax: 610 807 2844**
**www.guardiananytime.com**
**eden_guri@glic.com**